## THOMPSON *v.* STATE OF MARYLAND

[No. 75, September Term, 1975.]

*Decided June 17, 1976.*

42

The cause was argued before Singley, Smith, Digges, Levine, Eldridge and ▌O'Donnell, JJ.

*Benjamin Lipsitz,* with whom was *Eleanor J. Lipsitz* on the brief, for appellant.

*Arrie W. Davis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

Eldridge, J., delivered the opinion of the Court.

Maryland Code (1974, 1975 Cum. Supp.), § 4-301 of the Courts and Judicial Proceedings Article vests exclusive original jurisdiction in the District Court over certain enumerated criminal offenses, including those in which a person at least 16 years old is charged with violation of the motor vehicle laws. Certain exceptions to the District Court's exclusive original jurisdiction are set forth in § 4-302 of the Courts and Judicial Proceedings Article. Included among these exceptions is § 4-302 (d), which provides:

> "*Jury trial.* — (1) The District Court is deprived of jurisdiction if a defendant is entitled to and demands a jury trial at any time prior to trial in the District Court.
>
> "(2) A defendant may demand a jury trial in a criminal case if the penalty for the offense with which he is charged permits imprisonment for a period in excess of three months; the state may not demand a jury trial."

Section 4-302 (e) provides, with certain exceptions not here applicable, that

" . . . the District Court does not have jurisdiction of an offense or offenses otherwise within the District Court's jurisdiction if a person is charged with an offense or offenses arising from the same circumstances but not within the District Court's jurisdiction. In this case, the circuit court for the county has exclusive original jurisdiction over all the offenses."

The term "circuit court" includes the Criminal Court of Baltimore, Code (1974), § 4-101 (b) of the Courts and Judicial Proceedings Article.

On March 23, 1974, James Howard Thompson was issued traffic summonses for three alleged violations of the motor vehicle laws: (1) driving while intoxicated, in violation of Code (1957, 1970 Repl. Vol., 1975 Cum. Supp.), Art. $66^1/_2$, § 11-902 (a); (2) driving while his ability was impaired, in violation of Art. $66^1/_2$, § 11-902 (b); and (3) "skidding, spinning of wheels," in violation of Art. $66^1/_2$, § 11-1117. The offense of driving while intoxicated is punishable by imprisonment for not more than one year, or by fine of not more than $1,000, or both, Art. $66^1/_2$, § 17-101 (b) (i); the offense of driving while ability is impaired is punishable by imprisonment for not more than two months or a fine of not more than $500, or both, Art. $66^1/_2$, § 17-101 (b) (ii); and the offense of "skidding, spinning of wheels" is punishable by a fine of not more than $500, Art. $66^1/_2$, § 17-101 (b). Consequently, only one of the alleged offenses, driving while intoxicated, carried such maximum penalty as would entitle Thompson to demand a jury trial prior to trial in the District Court pursuant to § 4-302 (d) of the Courts and Judicial Proceedings Article.

When Thompson appeared for trial in the District Court he demanded a jury trial pursuant to § 4-302 (d) of the Courts and Judicial Proceedings Article. Thereafter, the entire case was transferred to the Criminal Court of Baltimore for trial.

When the case was called for trial in the Criminal Court, the State announced that it was entering a nolle prosequi with respect to the alleged violation of Art. 66½, § 11-902 (a), driving while intoxicated. Thompson subsequently reiterated his demand for a jury trial in the Criminal Court, or alternatively he insisted that the remaining charges be returned to the District Court for disposition by that court. The trial judge rejected the demand for a jury trial, deciding that since the remaining offenses with which Thompson was charged were "petty," there was no right to a trial by jury in the Criminal Court. Further, the trial court refused to return the case to the District Court, stating that once jurisdiction over the case was lawfully acquired it had no authority to return the lesser charges to the District Court after a nolle prosequi was entered on the charge of driving while intoxicated. Thereafter, Thompson was convicted in the non-jury trial of violating Art. 66½, § 11-902 (b), driving while ability impaired, and acquitted of the remaining charge.

On appeal to the Court of Special Appeals, Thompson contended that under § 4-302 (d) of the Courts and Judicial Proceedings Article he was entitled to a jury trial in the Criminal Court on the remaining charges. Alternatively, Thompson argued that if he had no right to a jury trial in the Criminal Court, then that court was deprived of jurisdiction over the remaining charges, and the case should have been returned to the District Court.

The Court of Special Appeals rejected Thompson's contention that he was entitled to a jury trial in the Criminal Court. *Thompson v. State,* 26 Md. App. 442, 446-447, 338 A. 2d 411 (1975). The court held that § 4-302 (d), entitling a criminal defendant to a jury trial only where the offenses entailed a possible penalty in excess of three months' imprisonment, applies both to demands in the District Court for jury trials and to criminal proceedings generally in the circuit courts or Criminal Court of Baltimore. Since the remaining charges against Thompson did not carry a penalty of more than three months' imprisonment, the Court of Special Appeals held that §

4-302 (d) expressly denied him a jury trial in the Criminal Court. The court also rejected Thompson's alternative contention that the case should have been returned to the District Court, deciding that once the Criminal Court lawfully acquired jurisdiction over the case the "subsequent entry of the nol pros had no effect on the continuance of its jurisdiction to decide the remaining charges." 26 Md. App. at 447. We issued a writ of certiorari to consider whether Thompson was entitled to a jury trial in the Criminal Court on the remaining charges, or alternatively whether those charges should have been returned for trial in the District Court.[1]

### (1)

Initially, we observe that the Criminal Court properly acquired jurisdiction over all three of the offenses with which Thompson was charged. As mentioned, the District Court is vested with exclusive jurisdiction where a person at least 16 years old is charged with violation of the motor vehicle laws, § 4-301 of the Courts and Judicial Proceedings Article. Section 4-302 (d), however, provides that where a defendant is charged in the District Court with an offense which permits imprisonment in excess of three months, he may demand a jury trial at any time prior to trial, causing the District Court to be "deprived of jurisdiction." Further, under § 4-302 (e):

> "*Several offenses.* — Except as provided in Subtitle 5, the District Court does not have

---

1. Thompson does not claim any federal or state constitutional right to be tried by jury for the offenses of driving while ability is impaired, and "skidding, spinning of wheels." Moreover, it seems clear that a *constitutional* right to a jury trial for such "petty" offenses does not exist. *See* Baldwin v. New York, 399 U. S. 66, 69, 90 S. Ct. 1886, 26 L.Ed.2d 437 (1970); Bloom v. Illinois, 391 U. S. 194, 210, 88 S. Ct. 1477, 1486, 20 L.Ed.2d 522 (1968); Duncan v. Louisiana, 391 U. S. 145, 159, 88 S. Ct. 1444, 1453, 20 L.Ed.2d 491 (1968); Cheff v. Schnackenberg, 384 U. S. 373, 86 S. Ct. 1523, 16 L.Ed.2d 629 (1966); Norwood v. Wiseman, 141 Md. 696, 700, 119 A. 688 (1922); State v. Loden, 117 Md. 373, 386, 83 A. 564 (1912); Crichton v. State, 115 Md. 423, 427, 81 A. 36 (1911); State v. Ward, 95 Md. 118, 51 A. 848 (1902); Danner v. State, 89 Md. 220, 42 A. 965 (1899); State v. Glenn, 54 Md. 572, 599-606 (1880).

jurisdiction of an offense or offenses otherwise within the District Court's jurisdiction if a person is charged with an offense or offenses arising from the same circumstances but not within the District Court's jurisdiction. In this case, the circuit court for the county has exclusive original jurisdiction over all the offenses."

The three offenses with which Thompson was charged in the District Court, viz. driving while intoxicated, driving while impaired, and "skidding, spinning of wheels," all arose from the same circumstances. Thompson demanded a jury trial on the charge of driving while intoxicated which, under Art. $66^{1}/_{2}$, § 17-101 (b) (i), permits imprisonment for a period in excess of three months, causing the District Court to be "deprived of jurisdiction" over that charge. Section 4-302 (d) (1) of the Courts and Judicial Proceedings Article. Consequently, under the provisions of § 4-302 (e) of the Courts and Judicial Proceedings Article, the Criminal Court had "exclusive original jurisdiction over all the offenses" "arising from the same circumstances," even though those offenses were "otherwise within the District Court's jurisdiction." Thus, upon Thompson's timely demand for a jury trial in the District Court, exclusive original jurisdiction over all three offenses became vested in the Criminal Court of Baltimore.

(2)

Thompson alternatively argued in the Court of Special Appeals that under § 4-302 of the Courts and Judicial Proceedings Article, the Criminal Court's continuing jurisdiction over the case depended on his being prosecuted in that court for an offense punishable by more than three months' imprisonment. Therefore, he urges, the State's entry of a nolle prosequi on the charge of driving while intoxicated operated to divest the Criminal Court of jurisdiction over the two remaining offenses.

We disagree. Section 4-302 deals only with circumstances whereby jurisdiction *attaches* in the circuit courts over

offenses "otherwise within the District Court's jurisdiction." Nothing in the provisions of that section or of any other statute or Rule of this Court supports Thompson's contention that the Criminal Court's jurisdiction may be subsequently ousted by dropping the intoxicated driving charge. In many circumstances, once a court lawfully acquires jurisdiction over a case, that jurisdiction may continue despite subsequent events, even though those events would have prevented jurisdiction from attaching in the first place. *See Automatic Retailers v. Evans Cig. Serv.*, 269 Md. 101, 105, 304 A. 2d 581 (1973); *Hardisty v. Kay*, 268 Md. 202, 212, 299 A. 2d 771 (1973); *Ledford Const. Co. v. Smith*, 231 Md. 596, 600, 191 A. 2d 587 (1963); *Kramer v. Kramer*, 26 Md. App. 620, 634, 339 A. 2d 328 (1975); *Gray v. State*, 6 Md. App. 677, 253 A. 2d 395 (1969).

(3)

Thompson primarily contends that he was entitled to a jury trial in the Criminal Court on the two remaining charges. As previously mentioned, the Court of Special Appeals held that § 4-302 (d) of the Courts and Judicial Proceedings Article expressly denied the right to a jury trial in the Criminal Court where the offenses did not involve a maximum penalty exceeding three months' imprisonment.

In our view, § 4-302 (d) concerns only the right to make a demand, in the District Court, for a jury trial. It has no application to the right to a jury trial for charges pending in the Criminal Court. Section 4-302 (d) is contained within Title 4 of the Courts and Judicial Proceedings Article, which deals exclusively with the jurisdiction of the District Court. Subtitle 3 of that title is concerned only with the criminal jurisdiction of the District Court. Section 4-301 sets forth the exclusive original jurisdiction of the District Court. Section 4-302 relates to exceptions to that jurisdiction, including under § 4-302 (d) the circumstance where the "defendant is entitled to and demands a jury trial at any time prior to trial *in the District Court.*" (Emphasis supplied.) As § 4-302 (d) makes clear, the section deals only with a demand made in

the District Court, which demand may be made where the maximum penalty for the offense charged exceeds three months' imprisonment. The three month criterion was established in connection with the creation of the District Court system in Maryland, being part of the law implementing the constitutional amendment establishing the District Court, Laws of Maryland, 1971, Ch. 423, § 145 (b) (5) (ii).

We therefore disagree with the Court of Special Appeals' holding that § 4-302 (d) removes the right to demand a jury trial in the circuit courts as well as in the District Court where the charge does not carry a penalty of at least three months' imprisonment. In our opinion, the right to a jury trial in criminal cases in the circuit court and Criminal Court of Baltimore, as opposed to the District Court, has not been limited by statute. In such circumstances, where a defendant is charged with a crime in a court of general common law jurisdiction, and where no legislative enactment restricts his right to a jury trial, we believe he is entitled to the common law mode of trial, *i.e.*, trial by jury.

At common law, after trial by jury became established, all criminal offenses, whether serious or minor, were triable only after indictment by a grand jury and by verdict of a petit jury. "However small the offense or pressing the need for the speedy disposal of insignificant cases, the offender and the community had to bear the delay and the cost of the deliberations of juries, and enjoyed whatever protection they afforded." Frankfurter and Corcoran, *Petty Federal Offenses and Trial By Jury*, 39 Harv. L. Rev. 917, 923-924 (1926).

During the reign of Edward III, legislation was enacted to create the office of the Justice of the Peace. 34 Edw. III, ch. 1 (1361); Beard, *The Office of the Justice of the Peace in England*, p. 33 (1904); Paley, *Summary Convictions*, p. 2 (6th ed. 1879). Under 36 Edw. III, St. 1, ch. 12 (1362), the justices were required to meet at quarterly intervals, resulting in the appellation "Quarter Sessions" for that court, and were empowered to "hear and determine" certain offenses. The

statutes conferring jurisdiction on the justices, however, were silent as to the manner in which the justices were to conduct their trials. Thus, according to Paley, they were

"restrained to the only mode of judicial inquiry known to the common law, and to which alone a general authority to *hear* and *determine* offences could refer. Neither the acts above alluded to, which were to be executed by special justices, nor, at first, those which were referred to the justices of peace by their name of office, contained any other direction as to the manner of their proceeding, than what was conveyed by the expressions authorizing them to *hear and determine,* or to *examine and punish* offences against the respective acts; which, according to the general principles of law, implies only a power to proceed by the common law method of inquisition and verdict.

"The justices, therefore, were under the necessity of holding sessions *and assembling jurors for the trial of these smaller offenses.*" Paley, *supra,* pp. 3-4. (Final emphasis supplied; others in the original.)

As the volume of criminal offenses increased, the need to deal with certain minor or petty offenses without the intervention of a jury became apparent. Consequently, there was enacted legislation permitting the justices of the peace to deal with certain enumerated offenses summarily, out of sessions, without the presence of a jury.[2] Beginning with the reign of Henry VII, minor offenses were more frequently committed by the legislature to the summary jurisdiction of

---

2. It has been noted that it is difficult, because of the ambiguity found in some of the earlier statutes, to determine exactly when justices were first vested with authority to try offenses "upon their own inquiry and judgment," without indictment or jury. Only one statute, Paley says, can be found earlier than the reign of Henry VII, in which "the appearance of a more arbitrary and discretionary jurisdiction" than the "common law mode of determination . . ., *i.e.,* by a jury . . . ." Paley, *supra,* p. 9. That statute, 17 Edw. IV, ch. 4 (1478), granted the justices "full Power to inquire, hear, and determine by their Discretions, as well as by Examination or otherwise," certain offenses.

the justices. *See* Frankfurter and Corcoran, *supra*, p. 924; Paley, *supra*, p. 9.

Thus, the summary jurisdiction power of the justices of the peace was developed to create a speedy remedy for criminal offenses. It was " 'an alternative to the more elaborate process of the Common Law,' viz. commitment for trial, indictment, and trial by jury." Alexander, *The Administration of Criminal Justice*, p. 41 (1915). Further, "[a]ll summary jurisdiction is the creation of statute law." *Reg. v. Justices of Norfolk*, 20 W.R. 382, 383 (1872) (Blackburn, J.). Unless an offense was specifically entrusted by statute to the summary jurisdiction of the justices it could not be tried in summary fashion, since the common law was a "stranger" to such proceedings. 4 Blackstone, *Commentaries*, p. 356 (W. Hammond ed. 1890); 4 Stephen, *Commentaries*, p. 416 (6th ed. 1868). *See State v. Gerry*, 68 N. H. 495, 38 A. 272 (1896); *People ex rel. Murray v. Justices*, 13 Hun. 533, 74 N. Y. 406 (1878); *People ex rel. Borowiak v. Hunt*, 157 App. Div. 848, 30 N.Y.Cr.R. 147, 143 N.Y.S. 233 (1913); *Work v. Ohio*, 2 Ohio St. 296, 308 (1854). *See also Callan v. Wilson*, 127 U. S. 540, 8 S. Ct. 1301, 32 L. Ed. 223 (1888); *Vaughn v. Scade*, 30 Mo. 600 (1860); *Malinowski v. Moss*, 196 Wis. 292, 220 N. W. 197 (1928).

In Maryland the second colonial assembly adopted the English practice of summary powers for certain offenses in an Act "for the Authority of the Justices of the Peace." 1 Archives of Maryland 52 (1638); *see* Frankfurter and Corcoran, *supra*, p. 957; *Smith v. State*, 17 Md. App. 217, 223 n. 10, 301 A. 2d 54, *cert. denied*, 269 Md. 766 (1973). Subsequently, by various Acts, additional offenses were committed to the jurisdiction of the justices of the peace.[3]

As in England, however, a statute must specifically direct that an offense is to be tried summarily. Otherwise trial is to be had according to the regular mode of the common law, including trial by jury. In *State v. Ward*, 95 Md. 118, 51 A.

---

**3.** For a history of summary jurisdiction in Maryland *see* Thomas, *Procedure in Justice Cases* (1905); Frankfurter and Corcoran, *supra*, pp. 957-962; State v. Glenn, *supra*.

848 (1902), the Court held that where a statute gave jurisdiction over an offense to the justice of the peace, and did not provide a right for a jury trial or to appeal from his decision, then no right to a jury trial or an appeal would lie.[4] In so holding the Court noted (95 Md. at 123, emphasis supplied):

> "Prior to the passage of this statute [Code (1888, 1900 Supp.), Art. 52, § 11A], Justices had no criminal jurisdiction except such as was conferred by the Act which created the offense and imposed the penalty. Cases in which the Justices were not in specific terms authorized to hear and determine, were cognizable only in the Criminal Court after indictment *and before a jury*, unless the alleged offender waived his right to a jury trial."

*Cf. State v. Glenn, supra,* 54 Md. at 606.

Turning to the instant case, the offenses with which Thompson was charged were within the exclusive original jurisdiction of the District Court. Code (1974, 1975 Cum. Supp.), § 4-301 of the Courts and Judicial Proceedings Article. However, upon Thompson's timely demand for a jury trial the District Court became deprived of jurisdiction over all the offenses, and exclusive original jurisdiction over those offenses became vested in the Criminal Court. Section 4-302 (d) (e). As a result, common law principles and rules relating to the jurisdiction of the Criminal Court became applicable.

No Maryland statute denies a defendant, charged in the Criminal Court with a so-called "petty" crime, the right to a jury trial. While it may be constitutional to do so, *Baldwin v. New York,* 399 U. S. 66, 90 S. Ct. 1886, 26 L.Ed.2d 437 (1970); *Duncan v. Louisiana,* 391 U. S. 145, 88 S. Ct. 1444, 20 L.Ed.2d 491 (1968); *Dist. of Columbia v. Clawans,* 300 U. S.

---

4. In *State v. Ward* the statute involved conferred jurisdiction on the Justice of the Peace to "try and determine all cases whereof they may have jurisdiction, and may pronounce judgment and sentence therein, in the same manner and to the same extent as the circuit court for said counties could do in such cases, as if such cases were tried before them without the intervention of a jury . . . ." Laws of Maryland, 1880, ch. 326.

617, 57 S. Ct. 660, 81 L. Ed. 843 (1937); *Callan v. Wilson, supra,* 127 U. S. 540; *Baum v. Warden of Jail,* 110 Md. 579, 584, 73 A. 294 (1909); *State v. Glenn, supra,* 54 Md. 572, the statutory provisions do not reflect such an intent on the Legislature's part.

The circuit courts, including the Criminal Court of Baltimore, are the "highest common-law" courts of record within the State, exercising *"full* common-law" powers and jurisdiction in criminal cases. Code (1974), § 1-501 of the Courts and Judicial Proceedings Article. (Emphasis supplied.) As discussed above, "[t]he regular common-law method of trial of issues of fact in criminal cases, except cases of summary proceeding, is by jury." Hochheimer, *Law of Crimes and Criminal Procedure,* p. 48 (1897). Absent legislative action taking the right away (in those instances where it would be constitutional to do so), the common law right to a jury trial remains applicable.

Moreover, nothing in the Maryland Rules purports to remove the common law right of a defendant to a jury trial in the Criminal Court. Maryland Rule 741 unqualifiedly provides that "[a]n accused may elect to be tried by jury or by the court." Rule 741 applies to criminal causes within the jurisdiction of the circuit courts and the Criminal Court of Baltimore. Rules 1 a 2; 5 i. Plainly, the rule recognizes the right of all defendants to elect a jury trial in the Criminal Court. Nothing in the language of Rule 741 even implies an exception for "petty" offenses.[5]

---

**5.** We recognize that in Smith v. State, 17 Md. App. 217, 301 A. 2d 54, *cert. denied,* 269 Md. 766 (1973), the Court of Special Appeals stated in dicta that Rule 741 "does not entitle an accused to a jury trial in all criminal proceedings, but only in those in which he has the constitutional right to jury trial." In Smith v. State, the defendant was convicted by the District Court of violating certain provisions of the traffic laws. He thereafter appealed *de novo* to the Criminal Court of Baltimore, where he demanded and was refused a jury trial. On appeal to the Court of Special Appeals, Smith contended only that the court's action violated his federal constitutional guarantees to a trial by jury. No contention was made that Smith had a common law right to a jury trial. The Court of Special Appeals rejected his constitutional contention, and we denied a petition for certiorari on that issue.

We express no opinion here concerning the possible existence of any right to a jury trial in the circuit court upon a *de novo* appeal from a District

We conclude, therefore, that Thompson was entitled to a trial by jury in the Criminal Court.

> *Judgment of the Court of Special Appeals reversed.*
>
> *Case remanded to the Court of Special Appeals with directions to reverse the judgment of the Criminal Court of Baltimore and remand the case for a new trial.*
>
> *Costs to be paid by the Mayor and City Council of Baltimore.*

---

Court criminal conviction. The instant case involves the original rather than the appellate jurisdiction of the circuit court or the Criminal Court of Baltimore.