489 A.2d 61

**STATE of Maryland**

v.

**ALLIED FIDELITY CORPORATION.**

**No. 889, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

March 13, 1985.

Richard B. Rosenblatt, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, Andrew L. Sonner, State's Atty. for Montgomery County and Louis S. Lear, Asst. State's Atty. for Montgomery County, Rockville, on the brief), for appellant.

Michael D. Mason, Rockville, for appellee.

Argued before GILBERT, C.J., and WILNER and ROBERT M. BELL, JJ.

GILBERT, Chief Judge.

The limited issue before this Court in this appeal by the State of Maryland is whether a judge of the Circuit Court for Montgomery County, Maryland, abused his discretion in rejecting the State's motion to reconsider an order striking a bail bond forfeiture. For the reasons stated *infra,* we conclude that the judge did not abuse his discretion, and we affirm.

Karen Anderson was charged by the Grand Jury of Montgomery County in June, 1978, with what now would constitute multiple counts of theft. *See* Md.Ann.Code art. 27, § 342. We infer from the record that Anderson was released on $25,000 bail that was posted by an approved surety. We further infer that at some point in time the appellee, Allied Fidelity Corporation, acquired the original surety's interest in the bail bond, and for the purposes of this opinion we are concerned solely with Allied and not any of its predecessors.

Anderson did not appear for trial, and the record contains no explanation of why she failed to appear. As a result of Anderson's nonappearance at trial, the circuit court on January 22, 1979, forfeited the bail bond. The amount was finally paid by Allied on July 20, 1979. Approximately three years later the proceeds of the bond were disbursed by dividing them equally between the county and the law library.

According to the transcript of the oral argument before Judge Beard, matters seemed to lie dormant until Allied discovered Anderson's presence in a federal institution. Allied then apparently notified the State of Anderson's whereabouts. The docket entries show that on October 3, 1983, Anderson's case was set for trial on October 14, 1983. On the date of trial the State entered a *nol pros* to the charges against Anderson. For all practical purposes, the

*nol pros* ended the criminal proceeding against Anderson, even though the State still has the opportunity, subject to constitutional considerations, to obtain another indictment.

Allied, on May 8, 1984, petitioned for a remittance of the forfeiture. A copy of the petition was certified to have been mailed to the deputy state's attorney. One week later the court ordered a remittance of the forfeiture. Two days later the State moved to rescind the order of remittance. The court, on June 15, 1984, after a hearing, denied the motion for a rescission. Twenty-seven days later the State appealed.

To characterize Md.Ann.Code art. 27, § 616½, the statute relative to bail bond forfeiture remittance, as unique is to understate the situation. Subsection (e)(1) of § 616½ provides:

> "Any court exercising criminal jurisdiction shall strike out a forfeiture of bail or collateral where the defendant can show reasonable grounds for his nonappearance. However the court shall allow a surety 90 days, or for good cause shown, 180 days from the date of failure to appear to produce the defendant in court before requiring the payment of any forfeiture of bail or collateral. The court shall strike out a forfeiture of bail or collateral deducting only the actual expense incurred for the defendant's arrest, apprehension, or surrender if the defendant is produced in court and if the arrest, apprehension, or surrender occurs more than 90 days after the defendant's failure to appear or at the termination of the period allowed by the court to produce the defendant."

This Court in *Allegheny Mut. Ins. Co. v. State,* 50 Md. App. 169, 173, 436 A.2d 515, 518 (1981), said:

> "The statute is hardly a model for unambiguous legislation. Why it is phrased as it is is not for us to answer.
>
> Whatever defect exists in the legislation, it, at least, spurs a surety on to find any defendant who defaulted on his appearance at trial. The surety is placed, by the statute, in the position of knowing that once he finds a

defendant who has fled, the surety may recover his loss by surrendering the defendant in court. Certainly, in the sense of encouraging sureties to seek and find defendants who fail to appear for trial, the statute serves a useful purpose. Nevertheless, it also seems to encourage sureties not to surrender a defendant, if a forfeiture has occurred, until after the expiration of 90 days following forfeiture. In that manner, the surety avoids the risk of the judge's failing to find 'reasonable grounds' for nonappearance and assures the striking out of the forfeiture by virtue of the clear legislative directive."

There is no question in the instant case but that Anderson was never surrendered to the circuit court. Indeed, no effort has apparently been made by the State's Attorney for Montgomery County to return her to Maryland. *See* Md. Ann.Code art. 27, §§ 616A–616R.

Subsection (e)(3) of § 616½ contains a legislative fiat as to what is to happen in the event a stet is entered. The statute provides:

"If a criminal case is stetted, (i) the defendant is entitled to a refund of any collateral put up by him for bail or recognizance; (ii) any other person who has furnished collateral is likewise entitled to a refund; and (iii) if any bond or other security has been furnished, the bond or other security shall be discharged, unless it has been declared forfeited, in which event neither the defendant nor any other person is entitled to a refund or discharge."

The Maryland law is that if either a stet or a *nol pros* is entered to the outstanding criminal charges, the prosecution is, at least temporarily, halted. Consequently, § 616½(e)(1), which permits recovery of a forfeited bail or collateral under specified conditions, would be inoperative. Where there are no pending charges, a surety's producing a person in court would be a useless act insofar as a remittance of the bail is concerned. Moreover, fall-out of such an event could be grave. Any attempt by the surety to produce Anderson before the circuit court at this time might be

tantamount to abduction, kidnapping, false arrest, and other criminal acts.

Section 616½(e)(3) proscribes a refund after both a forfeiture and a stet; it does not address what occurs upon the entry of a *nol pros* following a forfeiture. We believe the legislature deliberately chose to bar refunds when a stet is recorded after a forfeiture, because a stet cannot be registered over the objection of a defendant. *State v. Weaver*, 52 Md.App. 728, 729, 451 A.2d 1259, 1260 (1982). A *nol pros*, we think, was not included within § 616½(e)(3), inasmuch as the Maryland General Assembly obviously knew that a *nol pros* may be entered by the State without the consent of a defendant, and, indeed, over his or her strenuous objection. *Id.* Had a *nol pros* been included within the ambit of § 616½(e)(3), the State could, willy-nilly, file a *nol pros* after forfeiture, and thus preclude any remittance or refund of the forfeiture. It could, if it so desired, reindict the defendant and begin the procedure again, subject only to possible constitutional prohibitions.

The clear message of § 616½(e)(3) is that had the State, after forfeiture of the Anderson bail, entered a stet instead of a *nol pros* to the charges against Anderson, Allied would have no claim for a refund. As we have seen, for whatever reason, the State opted for a *nol pros* instead of a stet, even though it is highly doubtful that Anderson would have interposed an objection to that action irrespective of Allied's desires.

We were informed on oral argument that Allied advised the prosecutor sometime prior to the entry of the *nol pros* that Anderson was in custody at the Federal Correctional Institute in Alderson, West Virginia. The State, as we have said, responded to that information with entry of the *nol pros*. A certified copy of the "Line" requesting that the case be set "for a *nolle prosequi* on the earliest possible date" was mailed on September 29, 1983, to Karen Anderson at the correctional institution. The reason for the *nol pros*, the State suggests, is that the cases against Anderson

would be difficult to prove at this time because of lost witnesses.

Judge Beard, however, may have concluded that the prosecution lost interest in the case because of the passage of time, or that it was content to accept the $25,000 in lieu of having Anderson returned to Maryland for trial. The judge may have decided that it was fundamentally unfair to permit the forfeiture to stand, since Allied located Anderson and informed the State where she was confined. But for the State's election not to request Anderson's release to the Maryland authorities for trial, the bail would have to be returned.

Judge Beard did not illegally or improperly order a refund of the forfeited bail, under the circumstances of this case, nor did he abuse his discretion in refusing to strike the act that he had properly performed.

JUDGMENT AFFIRMED. COSTS TO BE PAID BY MONTGOMERY COUNTY.