490 A.2d 266

**Gisela HUEBNER**

v.

**DISTRICT COURT OF MARYLAND.**

**Hans J. HUEBNER**

v.

**DISTRICT COURT OF MARYLAND.**

**Nos. 830, 831, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

April 8, 1985.

464

Louis J. Martucci, Greenbelt, for appellants.

Richard B. Rosenblatt, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, Arthur A. Marshall, Jr., State's Atty. and Joseph B. Chazen, Asst. State's Atty. for Prince George's County, Upper Marlboro, on the brief), for appellee.

Argued Before GILBERT, C.J., and BLOOM and GETTY, JJ.

GILBERT, Chief Judge.

Gisela Huebner and her father, Hans J. Huebner, want a jury trial in the Circuit Court for Prince George's County. The State, however, invoking the so-called "Gerstung

Rule,"[1] insists that the Huebners be tried initially in the district court. The State asserts that if either or both of the Huebners are convicted in the district court, he or she would be entitled to a *de novo* trial on appeal. That trial may be before a jury. The Huebners, fully cognizant of their *de novo*-jury trial rights, insist that they, as a matter of right, are entitled under the facts of this case to a jury trial in the first instance. This appeal tests which of those divergent views is correct.

## The Facts

Hans J. Huebner was arrested on January 18 or 19, 1984, and charged with resisting arrest, malicious destruction of property, tampering with a motor vehicle, and disorderly conduct. The reason for the arrest is not disclosed by the record.

Gisela Huebner was arrested at the same time. She was charged with assault and battery upon a police officer, hindering a police officer, and disorderly conduct. The record is also silent as to the reason for her arrest.

In mid March, 1984, a status conference relative to the charges against both parties was convened in the district court before the administrative judge. At that conference the Huebners prayed a jury trial. The State, invoking the "Gerstung Rule,"[2] Courts Art. § 4–302(d)(2)(ii), declared

---

**1.** Named for Judge Robert J. Gerstung of the district court. The reference to the "Gerstung Rule" is actually incorrect, inasmuch as the "rule" is a statute. It appears as Md.Cts. & Jud.Proc.Code Ann. § 4–302(d).

**2.** Section 4–302(d) provides as follows:

"(d) Jury trial.—(1) The District Court is deprived of jurisdiction if a defendant is entitled to and demands a jury trial at any time prior to trial in the District Court.

(2)(i) Except as provided in subparagraph (ii) of this paragraph, unless the penalty for the offense with which the defendant is charged permits imprisonment for a period in excess of 90 days, a defendant is not entitled to a jury trial in a criminal case.

that it did not intend to seek a sentence in excess of 90 days. The judge agreed that if he were trying the cases, he would not impose a sentence in excess of 89 days. Notwithstanding the State's representation and the judge's statement as to the maximum sentence, the Huebner's filed written demands for jury trials.

Prior to commencement of the criminal proceedings in the district court, the Huebners filed a petition for a writ of certiorari in the Circuit Court for Prince George's County, in which they challenged the jurisdiction of the district court. The circuit court refused relief to the Huebners, declaring that they "had not yet been denied [their] right to jury trial ... because ... [the District Court Administrative Judge] was not the trial judge ... [and the] District Court Rules provide somewhere [3] ... that the presiding judge has to make the determination." In effect, the circuit court judge felt that the Huebners had put the cart before the horse. The hearing on the writ of certiorari was continued until the district court "presiding judge" ruled on whether to permit the State to invoke the "Gerstung Rule."

When the cases were called for trial in the district court, the State entered a *nolle prosequi* as to all charges, except that of disorderly conduct. The Huebners again requested trial by jury. The presiding judge ruled that because the State had *nol. prossed* the charges to which the right to a

---

(ii) Notwithstanding the provisions of subparagraph (i) of this paragraph, the presiding judge of the District Court may deny a defendant a jury trial if:

1. The prosecutor recommends in open court that the judge not impose a penalty of imprisonment for a period in excess of 90 days, regardless of the permissible statutory or common law maximum;

2. The judge agrees not to impose a penalty of imprisonment for a period in excess of 90 days; and

3. The judge agrees not to increase the defendant's bond if an appeal is noted.

(iii) The State may not demand a jury trial."

**3.** It appears that the circuit court confused the District Court Rules with Courts Art. § 4–302(d)(2)(ii), which provides that under the circumstances therein specified, "the presiding judge of the District Court may deny a defendant a jury trial...."

jury attached in the first instance, the prayer for a jury trial would be denied. The judge, however, prudently stayed the case pending a resolution of the writ of certiorari by the circuit court and this Court.

On April 18, 1984, the circuit court denied the writ and found that "jurisdiction is properly within the District Court."

## The Issues

I. What, if any, offenses with which the Huebners were charged entitle them to the right to trial by jury in the first instance?

II. May the State circumvent the accuseds' right to trial by jury by entering a *nolle prosequi* to charges where the right attaches?

## The Law

The origin of the right to trial by jury appears to be lost in history.[4] In 3 W. Blackstone, *Commentaries on the Laws of England* *349, it is said that in England "mention" of trial by jury has been traced to "the laws of King Ethelred." Ethelred reigned from 978 to 1016. The writers of the *Magna Carta* were so concerned over the right to trial by jury that they mentioned it more than once in that nonpareil document.[5]

Before the Revolutionary War, the Magna Carta guaranteed the right to trial by jury to Marylanders. After the

---

**4.** Shakespeare observed that juries have been around "since before Noah was a sailor." *Twelfth Night, III* (c. 1600). It might be that the right originated after the Great Flood but before Jonah was a stowaway.

**5.** For example, Chapter 39 of the *Magna Carta* provides in part that "no freeman shall be hurt in his person or property, except *'nisi juer legale judicium parium suorum vel per legem terrae'* [by judgment of his peers or law of the land]." Almost the same language appears in connection with Emperor Conrad, King of Germany and Holy Roman Emperor (1028–1039), two hundred years before the Magna Carta was signed. *See* 3 W. Blackstone, Commentaries *350.

war for independence, that right was vested in the people by the State Constitution. Indeed, that noble instrument twice assures the residents of Maryland of their right to a jury trial. Article 5 of the Declaration of Rights confers upon the populace of this State the benefits of "trial by Jury" according to the English common law and statutes as they existed on July 4, 1776. Article 21 of the Declaration of Rights provides that "in all criminal prosecutions," an accused "hath a right" to "a speedy trial by an impartial jury, without whose unanimous consent he [or she] ought not to be found guilty."

## I.

Despite the broad language of Article 21 of the Declaration of Rights, criminal trials without the interposition of a jury have regularly been sanctioned in Maryland. *State v. Zimmerman*, 261 Md. 11, 273 A.2d 156 (1971). The Court of Appeals has consistently held that the "right to a jury trial guaranteed by the Maryland Declaration of Rights does not attach, at least at the initial trial level, to certain minor criminal offenses." *Kawamura v. State*, 299 Md. 276, 291, 473 A.2d 438, 446 (1984) (citing *Danner v. State*, 89 Md. 220, 42 A. 965 (1899) and *State v. Glenn*, 54 Md. 572 (1880)). The Court has acknowledged that "it is difficult to define with precision the class of cases that could be so tried." *Danner*, 89 Md. at 226, 42 A. at 967.

Rather than endeavor to define cases which could be reached by summary proceeding, the court set guidelines for distinguishing those cases that may not be reached by summary proceeding. *State v. Glenn* and *Danner v. State, supra,* establish the principle that the State constitutional right to a jury trial attaches in the first instance to offenses which historically have been tried before juries. The right to trial initially by jury also attaches to any infamous

offense or any offense subject to infamous punishment.[6] *Kawamura v. State*, 299 Md. 276, 291, 473 A.2d 438, 446 (1984).

■ Gisela Huebner, as we have already noted, was charged, in addition to other things, with assault and battery upon a police officer.

In 1909 the Court of Appeals in *Baum v. Warden of Jail*, 110 Md. 579, 73 A. 294 (1909), held that the State constitutional right to a jury trial attached, at the initial trial level, to the offense of assault and battery. After reviewing the *Danner* decision, the *Baum* court observed that with regard to assault, "It is certainly of a more serious character than vagrancy or habitually disorderly conduct." *Baum* at 585, 73 A. at 296 (quoted in *Kawamura v. State*, 299 Md. 276, 292, 473 A.2d 438, 447 (1984)).

That position was reaffirmed in *State v. Stafford*, 160 Md. 385, 153 A. 77 (1931). There the court, relying on *Baum* and *Danner*, held flatly that the State constitutional right to a jury trial attached at the initial trial level to the offense of assault and battery.

Hans Huebner was initially charged, among other things, with resisting arrest. That particular crime was, at common law, an "infamous offense" without a prescribed penalty. According to Blackstone, it was of a "very high and presumptuous nature." 4 W. Blackstone, *Commentaries* *129. Inasmuch as resisting arrest is of such a serious nature, a person charged with that offense has a State constitutional right to a trial by jury in the first instance. Although we have found no case so holding, we are of the view that the offense is no less serious than an assault and battery committed upon a police officer who is in the

---

**6.** "The *Danner* court used the phrases 'infamous crime' and 'infamous punishment' interchangeably for purpose of jury trial right." *Kawamura v. State*, 299 Md. at 291 n. 17, 473 A.2d at 446 n. 17 (1984).

performance of his duty.[7]    Since assault and battery has been held to be of such a nature as to require a jury trial, when elected, in the first instance, *Baum v. Warden of Jail, supra,* we perceive no rational basis for denying a jury trial, initially, to a person charged with resisting arrest.

We hold, therefore, that a person charged with assault and battery or with resisting arrest is entitled to a trial by jury in the first instance.    Courts Art. § 4–302(d) may not be utilized by the State when those offenses are charged, if a jury trial is elected by the accused.

## II.

Having determined that both Hans and Gisela Huebner were entitled to a jury trial, we now turn to whether the State can deprive them of that right by entering a *nolle prosequi* to all but the most minor of the offenses charged.

Recently, in *State v. Allied Fidelity Corp.,* 62 Md.App. 291, 489 A.2d 61 (1985), this Court observed once again that the State may enter a *nol pros* over the objection of a defendant.    Consequently, the Huebners did not have to consent to that act by the prosecution.    All that a *nol pros* does, however, is carry out the prosecutor's desire not to proceed against the accused on the basis of that particular charging document.    *Ward v. State,* 290 Md. 76, 83, 427 A.2d 1008, 1012 (1981).    A *nol pros* does not allay the possibility of a future charge for the same offense.    Subject to dismissal on other grounds, the entry of a *nol pros* causes the matter to lie dormant until and unless the prosecutor elects to proceed on a new indictment, information or other charging document.

The facts in the case *sub judice* manifest that the Huebners opted for a jury trial *before* the State entered a *nol pros* with respect to all charges that might arguably be subject to the right to trial by jury initially.    Left standing

---

**7.**  We are not to be understood as holding that either assault and battery or resisting arrest is an "infamous crime."

before the district court was the single charge of disorderly conduct. Md.Ann.Code art. 27, § 123. The maximum penalty for that offense is a fine of not more than $500 or confinement in jail for not more than 60 days, or both. Disorderly conduct is regarded by the courts as a "petty offense" and one to which an accused is not entitled to a jury trial in the first instance. *See Baum v. Warden of Jail,* 110 Md. at 585, 73 A. at 296; *see also Kawamura v. State,* 299 Md. at 292, 473 A.2d at 447.

Judge Eldridge made crystal clear in *Thompson v. State,* 278 Md. 41, 47, 359 A.2d 203, 206 (1976), that when an accused demands a timely trial by jury for an offense on which he is historically entitled to such a trial, the district court is divested of jurisdiction over the case. Not only is the district court ousted of jurisdiction over the particular offense to which an accused is entitled to a jury trial initially, but it is also deprived of jurisdiction over *all* charges "arising from the same circumstances." *Id.* (quoting Courts Art. § 4–302 (e)). This is true even though the other offenses were within the jurisdiction of the district court. The proper election of a jury trial vests "exclusive original jurisdiction in the circuit court." *Id.; see also Butler v. State,* 41 Md.App. 677, 398 A.2d 514 (1979).

In *Thompson,* the accused elected not to have a driving while intoxicated charge tried in the district court, and, as was his right, he demanded trial by jury. The case was transferred to the then Criminal Court of Baltimore (now the Circuit Court for Baltimore City). The other charges to which Thompson was not initially entitled to trial by jury were transferred to the same court. The State then entered a *nol pros* to the offense of driving while intoxicated. Thompson argued, unavailingly, that the *nol pros* of the offense on which he was entitled to a jury trial divested the circuit court of jurisdiction over the other charges. In short, having obtained a *nol pros* to the most serious charge, he wanted to return to the district court where he believed, apparently, that he would fare better. Whatever

his reason, the deed was not accomplished. The Court held that the jurisdiction of the circuit court was firmly attached.

■ The instant case is the reverse side of *Thompson.* Here the defendants properly elected a trial by jury on all charges. As to Gisela Huebner, the election was, as we have seen, valid as to the assault and battery charge. The demand for a jury trial ousted the district court of jurisdiction over not only that charge, but all charges arising from the incident. So too with Hans Huebner. His jury trial demand on the resisting arrest charge divested the district court of jurisdiction. Simultaneously, under Courts Art. § 4–302(e), the district court also lost jurisdiction over the other offenses and there remained nothing before that tribunal.

■ Paraphrasing Judge Eldridge in *Kawamura* when, as here, the offense charged does not have a maximum penalty so that the judge can impose any sanction not constitutionally forbidden, the accused is entitled to demand a jury trial, and the district court automatically loses jurisdiction over the matter upon that demand. *Cf. Kawamura v. State,* 299 Md. 276, 285, 473 A.2d 438, 443 (1984).

Once the district court was divested of jurisdiction, the State could not revest jurisdiction in that court by entering a *nol pros* to all but the most petty of charges. If the State desired to *nol pros,* in the district court, certain charges, it should have done so before—not after—the court's jurisdiction was divested by a timely demand for a jury trial. Under the circumstances of this case, once the district court was ousted of jurisdiction, "all the king's horses and all the king's men" could not confer jurisdiction again.

We hold, therefore, that the writ of certiorari should have been granted and the case tried by a jury in the circuit court.

JUDGMENTS REVERSED. CASES REMANDED FOR FURTHER PROCEEDINGS. COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.