*92 Scileppi, J.
This is an appeal, taken by the County of Onondaga from an order of the Appellate Division, Fourth Department, which reversed an order of the Family Court, Onondaga County, adjudicating Daniel Richard D. to be a juvenile delinquent and remitting the matter to the Family Court for further proceedings.
On January 24, 1969 Daniel Richard D., the respondent herein, was taken into custody in connection with an investigation of the death of his father. The Family Court thereafter determined, pursuant to section 728 of the Family Court Act, that it had jurisdiction over the matter and a petition was filed on January 29, 1969 which charged respondent with being a juvenile delinquent alleging that he had shot and killed his father with a shotgun, acts which if committed by an adult would constitute the crime of murder (Penal Law, § 125.25). Counsel was retained, the charge was denied and motions were made requesting a jury trial, orders .requiring the County Attorney to prove his case beyond a reasonable doubt, service of notice under section 813-f of the Code of Criminal Procedure of his intention, if any, to introduce into evidence a confession or admission of respondent and for a Huntley hearing. These motions were denied, and March 13, 1969 was designated for a “fact-finding hearing” under section 744 of the Family Court Act. At this time counsel renewed the aforesaid motions which were again denied, and an off-the-record conference among counsel for the respondent, members of the County Attorney’s office and the court then ensued. As a result of this conference, the County Attorney offered to file a new petition alleging that respondent had committed an act which, if done by an adult, would constitute the crime of reckless endangerment in the first degree (Penal Law, *93 § 120.25). He added that “ [i]t is further our recommendation that upon the appropriate arraignment of this Court and upon Respondent being represented by counsel and by being properly advised by the Court if he admits the allegations of the new petition that at that time I would move for dismissal of the old petition ’' The court immediately conducted an inquiry, respondent admitted the allegations of the new petition and the old petition was dismissed. Thereafter on April 3, 1969, a "dispositional hearing ” was held pursuant to sections 743, 745 and 746 of the Family Court Act and respondent was committed to the New York State Agricultural and Industrial School for an indefinite period not to exceed three years (Family Ct. Act, §§ 753, 758). On appeal to the Appellate Division, the determination of the Family Court was reversed and the matter remanded for further proceedings. The majority took the view that respondent was entitled to a jury trial on the question of his delinquency and that the Supreme Court’s recent enunciation of the requirement of proof beyond a reasonable doubt in juvenile delinquency proceedings (In re Winship, 397 U. S. 358) should be applied retroactively. It further held that respondent was entitled to these rights, notwithstanding the fact that he had admitted all of the allegations of the second petition.
The County Attorney has appealed to our court pursuant to the certified question whether the Appellate Division order was properly made. In support of his position that a reversal is mandated, he argues that it is constitutionally permissible for us to draw a distinction between adults and juveniles under 16 years of age for the purpose of a jury trial. We agree. While it is, of course, true that a finding of juvenile delinquency, which will subject a juvenile to commitment for up to three years, may render the charge serious under Duncan v. Louisiana (391 U. S. 145) and Baldwin v. New York (399 U. S. 66), it is our opinion that the distinction, suggested by appellant, is not only proper, but necessary. In Kent v. United States (383 U. S. 541, 562) the Supreme Court expressed its view that it did ‘ ‘ not mean * * * to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but * * * that the hearing must measure up to the essentials of due process and fair treatment.” It was in In re Gault (387 U. S. 1, 10) that the court *94 defined its meaning of fairness to include (1) notice of the charges; (2) right to counsel; (3) privilege against self incrimination; (4) right to confrontation and cross-examination; (5) right to a transcript of the proceedings; and (6) right to appellate review. The court in Gault did not express an opinion on other due process requirements; concluding that due process does have a role to play and that “ [t]he problem is to ascertain the precise impact of the due process requisite upon such proceedings ” (Gault, supra, at pp. 13-14). Thus after Gault, it became apparent that the Supreme Court would resort to a case-by-case approach so as to determine what due process rights would obtain at a juvenile delinquency fact-finding hearing. It was in accordance with this approach that the “ reasonable doubt ” quantum of proof was recently added to the list (In re Winship, supra). Mr. Justice Brennan, writing for the court, adhered to the court’s view expressed in Kent and Gault that all due process elements were not required and that the sole issue before the court was the necessary quantum of proof. Implicit in the opinion of the court is the view that Winship would not be a death knell to our Family Court because the use of the reasonable doubt standard would not displace any of the benefits of the juvenile process or inhibit the functioning of the system. This point was amplified by Mr. Justice Habían in his concurring opinion. He wrote: ‘ ‘ In this regard, I think it worth emphasizing that the requirement of proof beyond a reasonable doubt that a juvenile committed a criminal act before he is found to be a delinquent does not (1) interfere with the worthy goal of rehabilitating the juvenile, (2) make any significant difference in the extent to which a youth is stigmatized as a 'criminal’ because he has been found to be a delinquent, or (3) burden the juvenile courts with a procedural requirement which will malee juvenile adjudications significantly more time consuming, or rigid. Today’s decision simply requires a juvenile judge to be more confident in his belief that the youth did the act with which he has been charged.” (In re Winship, supra, at p. 375; emphasis added).
We agree with Justice Harlan and a consideration of Kent, Gault and Winship leads us to conclude that trial by jury, in cases involving juvenile delinquents is neither constitutionally required nor desirable. To require a jury trial in such proceed *95 ings ‘ ‘ ‘ would inevitably bring a good deal more formality to the juvenile court without giving the youngster a demonstrably better fact-finding process than trial before a judge ’ ” (President’s Commission on Law Enforcement and the Administration of Justice: Task Force Report on Juvenile Delinquency and Youth Crime, pp. 38-40 [1967]; see Duncan, supra, at p. 158). Moreover, it would make delinquency adjudications unwieldy and disruptive since the Family Court is not structured to handle jury trials. This view is consonant with the majority of most State courts which have passed upon the issue since Gault was decided (see In re Fucini, 44 Ill. 2d 305, appeal to the Supreme Court filed April 6, 1970, 38 U. S. Law Week 3398; Dryden v. Kentucky, 435 S. W. 2d 457; In re Johnson, 254 Md. 517; In re Burrus, 275 N. C. 517; In re Agler, 19 Ohio St. 2d 70; Matter of McKeiver, 215 Pa. Super. Ct. 760, affd. 438 Pa. 339, probable jurisdiction noted, 399 U. S. 925; State v. Turner [Ore.], 453 P. 2d 910; In re Estes v. Hopp, 73 Wn. 2d 263; Ann. 100 ALR 2d 1241, right to Jury Trial in Juvenile Court Delinquency Proceedings; contra, Peyton v. Nord, 78 N. M. 717; see, also, DeBacker v. Brainard, 183 Neb. 461, app. dsmd. 396 U. S. 28, where the Supreme Court chose not to reach the jury issue because the juvenile delinquency adjudication anteceded Duncan v. Louisiana, 391 U. S. 145, supra).
Therefore, we see no compelling reason why we should burden the court with a procedural requirement which would make such adjudications significantly time consuming, cumbersome, and result in a loss of secrecy which has always been deemed most desirable, since a jury trial would not necessarily afford the youngster a better fact-finding process.
As to respondent’s claim to section 813-f notice, suffice it to say that Family Court procedure is not governed by the Code of Criminal Procedure (see Code Crim. Pro., § 11; Report of Joint Legislative Committee on Court Reorganization, 1962, Part II, p. 2; Matter of Williams, 49 Misc 2d 154). Since we conclude that a jury trial is not constitutionally required, respondent’s claim to the right of a separate Huntley hearing is without merit. Absent a jury trial all questions of fact, including those dealing with the voluntariness of any statements, are determinable by *96 the same Judge who presides at the trial (People v. Brown, 24 N Y 2d 168).
Turning to respondent’s argument that he was entitled to the reasonable doubt quantum of proof, it becomes significant that at the time the proceeding below was commenced (March, 1969), no such right existed. Since Winship was not decided by the Supreme Court until March 31, 1970, the question is one of retroactivity. This is still an open question, and the Supreme Court has thus far declined one opportunity to rule on the issue (see Santana v. Texas, 444 S. W. 2d 614, 397 U. S. 596, where the court granted certiorari, vacated the judgment and remanded for further consideration in light of Winship). While the Supreme Court is not required to give retroactive application to new rules, they have in the past done so where the integrity of the fact-finding process is involved (see, e.g., Linkletter v. Walker, 381 U. S. 618, 639; Tehan v. Shott, 382 U. S. 406, 416; Johnson v. New Jersey, 384 U. S. 719, 726). The court has recently departed from this policy in DeStefano v. Woods (392 U. S. 631) where it refused to give retroactive effect to Duncan v. Louisiana (supra). We hold that Winship should not be given retroactive effect since retroactive application of the reasonable doubt rule would substantially affect countless juvenile delinquency adjudications made on the prior standard.
Moreover, a reversal is mandated on the further ground that respondent’s voluntary and intelligent admission, by pleading guilty to the allegations of the second petition, accomplished an effective waiver and abandonment of all of the arguments urged on this appeal. The majority in the Appellate Division held that a 15-year-old lacked capacity to waive or bargain away any of his rights; however, Justice Henry, in dissent, took a different view: “ The court received the new petition. It was read to appellant. The court then stated to appellant and his attorney ‘ you can admit or deny the petition.’ Appellant’s attorney said, 'He admits the petition ’. The court asked appellant, ‘ Do you admit the allegations of the petition ? ’ and appellant answered, ‘ Yes, your Honor ’. The record shows, and appellant does not claim otherwise, that appellant’s answer to the new petition was voluntarily and understandingly made. He did not then, nor does he now, ask to withdraw or change his answer admitting the *97 allegations. The order appealed from committed appellant to the New York State Agricultural and Industrial School at Industry for an indefinite period not to exceed three years.
“ The original petition charged acts which if committed by an adult would constitute a Class A felony (Penal Law § 125.25). Upon an adjudication thereunder commitment could be to Elmira Reception Center (Family Ct. Act., § 758, subd. [b]), whereas under the new petition appellant could not be so committed. Appellant’s admission of the allegations of the new petition and his commitment should be sustained on the ground that it was sought by him [the off-the-record conference was requested by his attorney] and freely taken as part of a bargain which was struck for his benefit. ” (34 A D 2d 49).
We agree with Justice Henry, as there is no cogent reason why a 15-year-old, represented by counsel, cannot admit the allegations of a petition against him. While this appears to be a question of first impression in this court, such a practice is not, in our opinion, offensive to any of our notions of fairness and public policy.[1] In the case before us, there was no objection to the new petition and it is clear that respondent’s admission was freely and intelligently made. Numerous motions addressed to the original petition had been made and when they were denied, respondent’s attorney found it in the best interest of his client, after conferring with respondent and his family, to seek a new petition charging a lesser offense (see People v. Foster, 19 N Y 2d 150).
Since the admission to the allegations of the new petition was free from infirmity, the next question for our consideration deals with its effect. We believe that an admission to a juvenile delinquency petition should have the same force and effect as a plea of guilty to a criminal charge in a criminal case. “ A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment ” (Boykin v. Ala *98 bama, 395 U. S. 238, 242). There are grave consequences which attach to a guilty plea as it is a surrender of substantial constitutional rights, including the privilege against self incrimination, the right of confrontation and the right to a trial by jury (Boykin v. Alabama, supra, at p. 242; Brady v. United States, 397 U. S. 742; McMann v. Richardson, 397 U. S. 759).
Respondent in the instant case was in a position similar to the defendant in People v. Reyes (26 N Y 2d 97) where we recently said (at p. 100) that a “ defendant after being informed that he has a right to a hearing [on his addiction to narcotics who] freely admits his addiction with the aid of counsel, * * * is in effect stating that no judicial inquiry is necessary and, therefore, it is irrelevant whether that inquiry would have been made with or without a jury ”.
Accordingly, the order appealed from should be reversed, the order of the Family Court, Onondaga County, reinstated and the certified question should be answered in the negative.

. Under section 2186 of the former Penal Law there was specific statutory authority permitting a 15-year-old, charged with a crime punishable by death or life imprisonment, to plead guilty to a lesser offense. This section was not continued into the current Penal Law which exempts those under 16 from criminal responsibility (§ 30.00) and defers these matters to juvenile delinquency proceedings in the Family Court.