523 A.2d 1048

**In re JEANNETTE L.**

**In re SHIRLEY P.**

**Nos. 1032, 1033, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

April 14, 1987.

Certiorari Denied Sept. 9, 1987.

72

Laurie I. Mikva, Asst. Public Defender, Baltimore, for appellant, Jeannette. L.

Gary S. Offutt, Asst. Public Defender, Baltimore, for appellant, Shirley P.

Alan H. Murrell, Public Defender, Baltimore, on the brief, for appellants.

Deborah Chasanow, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Jillyn K. Schulze, Asst. Atty. Gen., Baltimore,

Arthur A. Marshall, Jr., State's Atty. for Prince George's County and Jeffrey L. Harding, Asst. State's Atty. for Prince George's County, Upper Marlboro, on brief), for appellee.

Argued before GILBERT, C.J., and KARWACKI and POLLITT, JJ.

GILBERT, Chief Judge.

These two appellants request, among other things, that the judgments against them be reversed because they received that for which they asked, a jury trial. Usually asking for and receiving a trial by jury is not a ground for appeal. Yet, when the request is made of a juvenile court, a forum where jury trials are not held, does the grant of the request constitute reversible error? Other issues raised by one or both of the appellants "run the gauntlet" from an attack on the constitutionality of Md. Educ. Code Ann. § 7–301(e)(2) to questioning the sufficiency of the evidence.

## THE FACTS

The appellants, Jeannette L. (Mrs. L.) and Shirley P. (Mrs. P.) have several things in common: Each is the mother of school-age children; each was charged in the juvenile court with violating the State's Education Article in that the children did not attend school regularly; each demanded and received a jury trial in the juvenile court of Prince George's County; each was convicted by the jury and ultimately received suspended fines and sentences; each was placed on probation, and each appealed.

The record reflects that at the time of trial Mrs. L.'s daughters were twelve and ten years old, respectively. The older daughter was absent from school 86.5 days between September 11, 1985, and April 25, 1986. The younger daughter was absent from school 70 days between October 8, 1985, and April 28, 1986. Mrs. L. did not testify.

Her older daughter told the jury that the reasons she stayed home from school were her grandmother's death,

her great-aunt's hospitalization, her own hospitalization because of mononucleosis and her subsequent recuperation, rumors being spread at school about the reason for her hospitalization, and a rash and welts on her arm.

The younger daughter related to the jurors that she missed school because she helped her terminally ill grandfather, was hospitalized for a hip infection, had various sicknesses and colds, and could not get to school when the bus did not stop for her.

Mrs. P. also has two daughters. The daughters are eleven months apart in age. Nevertheless, on the trial date they were both fifteen years old.

Mrs. P. testified that the reasons for the daughters' nonattendance at school were her state of health, lack of cooperation from her children, and her inability to control their conduct. She also said that her daughters were often sick, citing such ailments as a sore mouth after having a cavity filled, a cut finger, and earaches. She permitted the children to stay home since she had no transportation and could not pick them up from school if they wanted to come home at midday.

Mrs. P.'s older daughter was absent from school 71 days between September 1985 and February 22, 1986. Her younger daughter, during the same time frame, was absent 76 days.

The petitions that were filed in the juvenile court[1] against the two women alleged that each of them did:

"a. induce or attempt to induce ... a child subject to the compulsory attendance law of the State as defined in Section 7–101 [sic] of the Education Article of the Anno-

---

1. That an adult may be tried in a juvenile court, for certain specified offenses, is established by Md.Cts. & Jud.Proc.Code Ann. §§ 3–831 and 3–804(d). *See also* Md.Rule 913 f.

tated Code of Maryland, to be unlawfully absent from school on [a stated number of days].[2]

b. employ or harbor ... a child subject to the compulsory attendance law of the State as defined in Section 7–301 of the Education Article of the Annotated Code of Maryland, thereby causing the child to be unlawfully absent from school on [a stated number of days].

c. From [a given date to another given date] have control over ..., a child who was six (6) years or older and under sixteen (16) years of age and who is subject to the compulsory attendance laws of the State as defined in Section 7–301 of the Education Article of the Annotated Code of Maryland, and failed to see that the child attended school or received instruction...."

Mrs. L. and Mrs. P. were tried separately. Each moved for a jury trial. Over the State's objection, the trial judge granted the motion and empaneled a jury.

Mrs. P. was found by the jury to be guilty of count c, "hav[ing] control over ... [but] fail[ing] to see that the child attended school or received instruction." She was sentenced to pay a fine of $500 and serve fifty days in the County Detention Center. The fine and jail term were suspended, and Mrs. P. was placed on supervised probation for two years.[3]

The jury determined that Mrs. L. was guilty of counts b and c. She was fined $750 for each count and sentenced to concurrent terms of seventy-five days in the County Detention Center. The jail term and fine were suspended, and she was placed on probation for five years.[4]

---

**2.** Educ. Article, § 7–101 (Free Admission of Students to Public Schools) does not relate to the matter charged in paragraph "a" of the petition. It is an obvious misprint. The State apparently meant to aver that appellants violated § 7–301 (Compulsory Attendance).

**3.** In addition, Mrs. P. was to complete "50 hours of community service" at the school the youngest child was attending.

**4.** As a condition of probation, Mrs. L. was directed to serve "76 hours (total) community service" at two different schools.

Immediately prior to the imposition of sentence, defense counsel informed the court that the jury trial demands made by Mrs. L. and Mrs. P. should not have been granted. Counsel asserted that when he asked for a jury trial he expected the case to be transferred to the district court, which had concurrent jurisdiction over the subject matter.[5] The trial judge observed, as do we, that there currently are no jury trials conducted in the district court. The judge declined to strike the verdict and suggested that appeals be filed.

## THE ISSUES

In this Court Mrs. L. has fired a scatter gun at the proceeding in and judgment of the juvenile court. She puts eight questions to us. Mrs. P. has advanced five issues. Some of the matters posed by the two appellants, not surprisingly, are concerned with the same facts and law. We shall, therefore, divide the issues into three categories, i.e., joint, Mrs. L.'s, and Mrs. P.'s.

## JOINT ISSUES

### I.

*Are the judgments of the circuit court, sitting as a juvenile court, invalid because the appellants were tried by a jury?*

■ The appellants aver that the trial court lacked the authority to permit a jury trial. To support their position, the appellants point to Md.Rule 910(a) and to the opinion in the case of *In re: Johnson,* 254 Md. 517, 255 A.2d 419 (1969).

Maryland Rule 910(a) provides in clear and unambiguous language that hearings conducted by a juvenile court *"shall be ... without a jury."* (Emphasis supplied.)

---

**5.** *See* Maryland Courts & Judicial Proceeding Code Ann. § 3–804(d).

The Court of Appeals, speaking through Judge Singley, said in *Johnson,* 254 Md. at 531, 255 A.2d at 426:

"[T]his Court long has recognized that in Maryland 'juvenile courts are courts of equity for juvenile causes' having 'the power and full right to decide without a jury every question of law and fact which may arise out of the subject matter before it and over which it has jurisdiction....' "

The Court further commented that if jury trials are to be part of the juvenile court system the Legislature will have to so provide. *Johnson* was decided more than seventeen years ago, and thus far the General Assembly has not required trial by jury in cases over which the juvenile court exercises jurisdiction. *See* Courts Art., §§ 3–801 to 3–835.

Two years after *Johnson* the Supreme Court decided *McKeiver v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971). Justice Blackmun, writing for the plurality, remarked that "trial by jury in the juvenile court's adjudicative range is not a constitutional requirement." 403 U.S. at 545, 91 S.Ct. at 1986.

The plurality of the high court reasoned that a trial by jury would "remake the juvenile proceeding into a fully adversary process and ... put an effective end to what has been ... an ... informal protective process." 403 U.S. at 545, 91 S.Ct. at 1986. Justice Blackmun penned:

"Since *[In re] Gault* [387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) and since *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) ] the great majority of States, in addition to Pennsylvania and North Carolina, that have faced the issue have concluded that the considerations that led to the result in those two cases do not compel trial by jury in the juvenile court. *In re Fucini,* 44 Ill.2d 305, 255 N.E.2d 380 (1970); *Bible v. State,* [253] Ind. [373], 254 N.E.2d 319 (1970); *Dryden v. Commonwealth,* 435 S.W.2d 457 (Ky.1968); *In re Johnson,* 254 Md. 517, 255 A.2d 419 (1969); *Hopkins v. Youth Court,* 227 So.2d 282 (Miss.1969); *In re J.W.,* 106 N.J.

Super. 129, 254 A.2d 334 (1969); *In re D.*, 27 N.Y.2d 90, [313 N.Y.S.2d 704], 261 N.E.2d 627 (1970); *In re Agler*, 19 Ohio St.2d 70, 249 N.E.2d 808 (1969); *State v. Turner*, 253 Ore. 235, 453 P.2d 910 (1969). See *In re Estes v. Hopp*, 73 Wash. 2d 263, 438 P.2d 205 (1968); *McMullen v. Geiger*, 184 Neb. 581, 169 N.W.2d 431 (1969). To the contrary are *Peyton v. Nord*, 78 N.M. 717, 437 P.2d 716 (1968), and, *semble, Nieves v. United States*, 280 F.Supp. 994 (SDNY 1968)."

403 U.S. at 549, 91 S.Ct. at 1988.

A reading of the federal and state cases makes it unmistakable that a juvenile offender is not entitled to a jury trial in the juvenile court.

Prior to 1984, the only offense for which an adult could be charged in the juvenile court was that of contributing to a child's delinquency, a need for supervision, or a need for assistance.[6] Courts Art., § 3–831.

Whenever an adult is charged under Courts Art., § 3–831, he or she is entitled to move for a waiver of jurisdiction and, as a matter of right, have the case sent to the appropriate court. Courts Art., § 3–804(c); Md.Rule 913 f.[7] The stat-

---

6. Md.Cts. & Jud.Proc.Code Ann. § 3–831 provides:
"(a) It is unlawful for an adult wilfully to contribute to, encourage, cause or tend to cause any act, omission, or condition which results in a violation, renders a child delinquent, in need of supervision, or in need of assistance.
(b) A person may be convicted under this section even if the child has not been found to have committed a violation, adjudicated delinquent, in need of supervision, or in need of assistance. However, the court may expunge a delinquent adjudication from the child's record and enter it as a finding in the adult's case.
(c) An adult convicted under this section is subject to a fine of not more than $2,500 or imprisonment for not more than 3 years, or both. The court may suspend sentence and place the adult on probation subject to the terms and conditions it deems to be in the best interests of the child and the public."

7. Maryland Rule 913 f provides virtually the same as Courts Art., § 3–804(c):
"Jurisdiction over an adult respondent charged under Section 3–831 of the Courts Article may be waived by the court upon its own motion, or after a hearing upon the motion of any party, if charges

ute and rule were designed to afford jury trials to adults. That right is, however, limited to offenses arising out of alleged violations of Courts Art., § 3–831.

Until 1984 Md.Laws Ch. 664, no problem existed with respect to adults and their right to demand a waiver to a criminal court where they could, if they chose, have a trial by jury. Because the penalty prescribed for violation of Courts Art., § 3–831 is substantial, a trial by jury, is required, if demanded. Courts Art., § 3–804(c) and Rule 913 f are but recognition of that right. *See* generally, *Huebner v. District Court,* 62 Md.App. 462, 490 A.2d 266 (1985), *aff'd, State v. Huebner,* 305 Md. 601, 505 A.2d 1331 (1986); *see also Fisher v. State,* 305 Md. 357, 504 A.2d 626 (1986); *Kawamura v. State,* 299 Md. 276, 473 A.2d 438 (1984). No other type of what is normally considered a "criminal offense" was punishable by the juvenile court except possibly criminal contempt. *See Thomas v. State,* 21 Md.App. 572, 320 A.2d 538 (1974), *cert. denied,* 272 Md. 749 (1974).

The Legislature in 1984 Md.Laws Ch. 664 added to Courts Art., § 3–804, paragraph (d), which provides:

"The jurisdiction of the court is concurrent with that of the District Court in any criminal case arising under the compulsory public school attendance laws of this State."

against the adult respondent arising out of the same incident are pending in the criminal court; and shall be waived upon the motion of the adult respondent."
Effective July 1, 1987, the Rule will read:
"f. Adult Respondent.
Jurisdiction over an adult respondent charged under Section 3–831 of the Courts article shall be waived by the court upon the motion of the State's Attorney or the adult respondent. Jurisdiction may be waived by the court upon its own initiative or after a hearing upon the motion of any party, if charges against the adult respondent arising out of the same incident are pending in the criminal court."
*See* Ninety-sixth Report of the Standing Committee on Rules of Practice and Procedure, approved by the Court of Appeals of Maryland, March 3, 1987.

That paragraph confers upon a prosecutor the absolute discretion to determine whether an adult who is accused of violating the compulsory public school attendance laws is to be charged in the district court or juvenile court.

Neither appellant has attacked the constitutionality of Courts Art., § 3–804(d), and we express no opinion as to its validity. *But see* 72 Op.Att'y Gen. No. 87–006 (February 10, 1987).

Assuming *arguendo* the constitutionality of Courts Art., § 3–804(d), it becomes readily apparent that the juvenile court had subject matter jurisdiction over the offenses charged because the Legislature so provided. 1984 Md. Laws Ch. 664.

The question then before us becomes not one of the jurisdiction of the juvenile court but rather its authority procedurally to conduct a jury trial. As interesting as that question may be, we do not decide it because the appellants have by their acts waived their right to raise the issue. *Lohss v. State*, 272 Md. 113, 321 A.2d 534 (1974).

In *Lohss*, a circuit court had ruled that a search was illegal. Consequently, the State was prevented from introducing evidence derived from the search. Lohss then moved to dismiss the charges, and the State agreed, declaring it had "no objection" to that dismissal. The State then moved to dismiss a co-defendant on the ground that, absent the "suppressed evidence," it was unable to proceed. The co-defendant, understandably, interposed no objection to the State's motion. On appeal by the State this Court reversed. *State v. Lohss*, 19 Md.App. 489, 313 A.2d 87 (1973). The Court of Appeals disagreed with our decision, reversed it, and reinstated the dismissal of the indictments. The Court said:

> "[T]he right of appeal may be lost by waiver or estoppel when there is acquiescence or recognition in the validity of the decision from which the appeal is taken or by otherwise taking a position inconsistent with the right of appeal, *see Rocks v. Brosius, supra,* 241 Md. [612] at 630

[217 A.2d 531 (1966)]. Nor can one appeal from a judgment or order where the relief he prays for is granted. *Adm'r, Motor Veh. Adm. v. Vogt* [267 Md. 660, 299 A.2d 1 (1973)], *supra; Wright v. Baker*, 197 Md. 315, 318, 79 A.2d 159 (1951); *Mugford v. City of Baltimore*, 185 Md. 266, 269, 44 A.2d 745, 162 A.L.R. 1101 (1945)."

272 Md. at 118, 321 A.2d 534.

Mrs. L. and Mrs. P. demanded and received a jury trial. By so doing they acquiesced in and recognized the validity of that form of trial. It is with ill grace that they now complain they should not have gotten that for which they asked.

*Lohss* is absolutely dispositive of the matter. Any error in granting a jury trial was waived by the appellants' being the movants in that seemingly procedural aberration.

## II.

*Is Md.Educ.Code Ann. § 7–301(e)(2) constitutional?*

█ The Maryland compulsory public school attendance statute, Educ. Art., § 7–301(c), provides:

"Each person who has under his control a child who is 6 years old or older and under 16 shall see that the child attends school or receives instruction as required by this section."

The penalties for noncompliance with the statute are stated in Educ. Art., § 7–301(e):

"(1) Any person who induces or attempts to induce a child to absent himself unlawfully from school or employs or harbors any child who is absent unlawfully from school while school is in session is guilty of a misdemeanor and on conviction is subject to a fine not to exceed $500 or imprisonment not to exceed 30 days, or both.

(2) Any person who has control over a child who is 6 years old or older and under 16 who fails to see that the child attends school or receives instruction under this section is guilty of a misdemeanor and on conviction is

subject to a fine not to exceed $50 per day of unlawful absence or imprisonment not to exceed 10 days, or both.

(3) As to any sentence imposed under this section, the court may suspend the fine or the prison sentence and establish terms and conditions which would promote the child's attendance. The suspension authority provided for in this subsection is in addition to and not in limitation of the suspension authority under Article 27, Section 641A of the Code."

The constitutional challenge is bottomed on the alleged vagueness of the penalty provisions of § 7–301(e)(2).

Appellants assert that subsection (2) of § 7–301(e) fails to specify what persons are subject to its provisions. The statute as written, the appellants aver, might be applied to any school bus driver who permits a child to alight from the bus before it arrives at the school itself. That argument places the proverbial cart before the well-known and shop-worn horse.

The Court of Appeals in *Bowers v. State*, 283 Md. 115, 122, 389 A.2d 341, 346 (1978), through Judge Levine, made transpicuous that the constitutionality of a statute attacked on the ground of vagueness is "determined strictly on the basis of the statute's application to the particular facts at hand." (Citations omitted.) It is "immaterial that the statute is of questionable applicability in foreseeable marginal situations, if a contested provision clearly applies to the conduct of the defendant in a specific case." *Id.*, citing *United States v. Petrillo*, 332 U.S. 1, 7, 67 S.Ct. 1538, 1542, 91 L.Ed. 1877, 1883 (1947). *See United States v. Powell*, 423 U.S. 87, 92, 96 S.Ct. 316, 320, 46 L.Ed.2d 228, 234 (1975).

The trilogy of *Bowers*, *Powell*, and *Petrillo* makes clear that we must consider the vagueness issue only in respect to the appellants' cases. The statute obviously applies to the appellants, inasmuch as they fit within the ambit of Educ. Art., § 7–301(a). Since the statute is manifestly applicable to the appellants, it is immaterial whether it applies to a school bus driver.

The appellants further contend that the statute fails to indicate whether a single absence from school is sufficient to trigger the provisions of § 7–301(e)(2). Moreover, they ask what constitutes attending school "regularly." [8]

Because in these two appeals it is apparent that the children of the appellants were absent from school for substantial periods of time, the appellants need not puzzle over whether the act applies to a single absence. Irrespective of how one reads the statute, the extensive unexcused absences of the appellants' children are embraced within its scope.

*Bowers* declares:

"A statute is not vague when the meaning of the words in controversy can be fairly ascertained by reference to judicial determinations, the common law, dictionaries, treatises or even the words themselves, if they possess a common and generally accepted meaning."

283 Md. at 125, 389 A.2d 341. If read out of context, Educ. Art., § 7–301(e)(2) appears to permit prosecution of any parent who fails to see that his or her child attends school on any given day. When § 7–301(e)(2) is read together with § 7–301(a), however, it is perspicuous that the former applies only when a child is not "regularly" attending school. Therefore, the parent whose child fails to attend school on one day is not subject to prosecution so long as the child attends the school "regularly."

Next, appellants asseverate that Educ. Art., § 7–301(b) is vague because it does not provide adequate guidance as to what constitutes a legitimate excuse for an absence. The statute provides:

---

**8.** Educ. Art., § 7–301(a) provides in pertinent part:
"Each child who resides in this State and is 6 years old or older and under 16 *shall attend a public school regularly* during the entire school year unless the child is otherwise receiving regular, thorough instruction during the school year in the studies usually taught in the public schools to children of the same age."

"A county superintendent, school principal, or an individual authorized by the county superintendent or principal may *excuse* a student for a *necessary absence*." (Emphasis supplied).

There may be cases in which it might be difficult to prove that a particular absence from school was not necessary. The instant matters, however, are not included with that class of cases. We have already recounted the appellants' daughters' reasons for missing school. Needless to say, they were neither excused nor excusable.

Albeit we leave the question to school authorities of what is excusable absence, we surmise that a "necessary absence" would, among others, encompass a death in the family, a serious illness or injury, or some emergency situation clearly mandating the child's absence from school.

Appellants' final vagueness assault on the statute advances the argument that Educ. Art., § 7–301(e)(2) imposes "strict liability" on the appellants for actions of a third party, their children, who "may or may not be subject to the control of the accused." We have an entirely different view.

The statute does not subject a parent to prosecution for the actions of his or her children, but it does sanction prosecution for the parent's own acts. Before a person may be found guilty of violating § 7–301(e)(2), the court must find: 1) the person had control over the child and 2) failed to see that the child attended school regularly.

The statute imposes an affirmative duty on persons who have control over a child over age six but under age sixteen. That duty is to assure that the child attends school regularly. Failure to perform that duty is a violation of the statute. Passive acquiescence in the child's nonattendance of school is no defense.

We hold Educ. Art., § 7–301(e)(2) is not void for vagueness.

## III.

*Did the trial judge commit "plain error" in not instructing the jury as to the elements of an offense under Educ. Art., § 7-301(e)(2)?*

 Appellants concede, as they must, that no objection was made to the trial judge's instructions to the jury relative to the elements of an offense allegedly committed in violation of Educ. Art., § 7-301(e)(2). Nevertheless, appellants ask that we hold that the judge committed "plain error" in not so instructing.

Our review of the instructions indicates that appellants are laying a "smoke screen." The judge told the jury:

"If you find that the defendant was the parent or guardian of a child subject to the compulsory attendance law of the State of Maryland, then you must place upon the defendant the duty imposed by law: Each person who has *under his or her control* a child who is six years old or older, and under sixteen *shall see that the child attends school* or receives instruction as required by this statute.

So, if you find that the defendant is a person who has these children under her control, then she has a responsibility of either seeing that they go to the public school system, or that they received education they would have received in the public school system, at some other location.

The child must not have attended school on a regular basis for you to find the defendant guilty of violating the statute. And, these excessive absences must not be excused. [sic]

The statute defines excused absences as, a county superintendent, school principal, or an individual authorized by the county superintendent or principal may excuse a student for a necessary absence.

If you find beyond a reasonable doubt that the defendant was the parent or guardian of a child under her control subject to the compulsory attendance laws of

Maryland, and that the child has excessive, or unexcused absences, and the defendant did not see that the child regularly attended school, you must find the defendant guilty of this statute."

These instructions adequately covered the law. There was, as we see it, no error, much less "plain error," material to the rights of the accused. Md.Rule 4–325(e); *Sine v. State,* 40 Md.App. 628, 394 A.2d 1206 (1978).

## IV.

*Were illegal sentences imposed on the appellants?*

Mrs. L., as we have previously noted, was found guilty of two counts of violating Educ. Art., § 7–301(e)(1) and two counts of violating Educ. Art., § 7–301(e)(2). The maximum penalty that may be meted to an offender for violating § 7–301(e)(1) is a fine "not to exceed $500 or imprisonment not to exceed 30 days or both." The maximum penalty for violating § 7–301(e)(2) is "a fine not to exceed $50 per day of unlawful absence or imprisonment not to exceed 10 days, or both." The juvenile court, however, imposed four concurrent fines of $750 and four concurrent jail terms of 75 days. The sentences and fines were suspended. Mrs. L. was placed on probation under certain terms and conditions.[9]

■ With respect to the violations of Educ. Art., § 7–301(e)(1) it is obvious that the fine exceeds by $250 the maximum imposed by law. The jail sentence also exceeds by 45 days that permitted by statute.

The sentences with regard to violations of Educ. Art., § 7–301(e)(2) are equally illegal and somewhat perplexing. As to one daughter, the jury found Mrs. L. guilty of count c. That count read, in pertinent part, that Mrs. L. "did ... from September ... 1985 to April 25, 1986 have control over ... a child ... and failed to see that the child attended school...." With regard to the other daughter, the jury also found Mrs. L. guilty of count c. That count charged

---

9. See n. 4, *supra.*

unlawful absence by the daughter from "October 8, 1985 to April 28, 1986."

█ We are unable to tell whether the jury convicted Mrs. L. of a violation for every day of that period of time or for merely some of those dates. We are certainly unable to state that she was convicted of violating the statute on seventy-five days because there is nothing in that particular count upon which we could predicate that declaration. Patently, there are more than seventy-five school days between the dates specified in counts c.

There was evidence, if believed, which would have permitted the jury to find that, with respect to the older daughter, Mrs. L. was guilty of violating Educ. Art., § 7–301(e)(2) on 86.5 days. There was also evidence from which the jury could conclude that Mrs. L. violated the statute seventy times as to the younger daughter. The difficulty is that the jury, insofar as count c is concerned, was not asked to determine the number of days of unlawful absence. As we have said, the statute, when read together with § 7–301(a), requires more than an isolated incident.

As charged in count c, Mrs. L. is guilty of but one offense. The maximum fine for that offense is $50 or a maximum jail term of ten days or both. Since Mrs. L. was convicted of two separate count c offenses, she could have been sentenced consecutively, which would have resulted in a total fine of $100, a total jail term of twenty days, or both the fine and imprisonment.

█ Mrs. P. was convicted of violating § 7–301(e)(2). She was sentenced to fifty days in jail and fined $500. Both the fine and the jail term were suspended, and she was placed on probation.[10]

Section 7–301(e)(2) provides in pertinent part:

---

**10.** See n. 3, *supra.*

"Any person who ... is ... [convicted] is subject to a fine not to exceed $50 per day of unlawful absence or imprisonment not to exceed 10 days or both."

The trial judge read the section to mean that a defendant could receive a fine of $50 for each day of unlawful absence *and* a jail sentence of ten days for each day of unlawful absence or both the fine and the jail sentence. We read the statute somewhat differently. We think the fine may be levied at the rate of $50 per day of unlawful absence, but the provision relating to imprisonment allows but one term of no more than ten days. It is important to note that the words "per day of unlawful absence" precede, not follow, the clause "or imprisonment not to exceed 10 days or both." Had the Legislature intended that a person convicted of violating § 7–301(e)(2) was to serve ten days imprisonment for each day of the child's "unlawful absence" from school, it would have rephrased the penalty to read: "a fine of $50 per day, or imprisonment not to exceed 10 days, or both, for each day of unlawful absence." The manner in which the statute is worded clearly indicates that the Legislature did not intend the penalty to be as interpreted by the trial judge.

Because the sentences are illegal, we vacate them and remand the cases for imposition of proper sentences.

## MRS. L.'S SEPARATE ISSUES

## V.

*Did the trial court err in instructing the jury on the definition of the word "harbor"?*

■ The record indicates that the court instructed the jury with respect to a violation of Educ. Art., § 7–301(e)(1):

"[T]he defendant is charged with a violation of Section 7–301 ... (1), which ... [provides] that any person who employs or *harbors* any child, who is absent unlawfully

from school while school is in session, is guilty of this offense. Therefore, if you find that the defendant employed or *harbored* any child unlawfully absent from school while school was in session, you must find the defendant guilty of violations of this section of the educational article." (Emphasis supplied.)

No exception by appellant was taken to the court's instructions. During their deliberation, the jury sent a note to the court in which it asked, "May we please have a better definition of harboring?" After a discussion with the attorneys involved, the judge replied, "The word used at law has the same meaning as used by lay people."

Mrs. L.'s attorney objected to the court's responding to the jury. Counsel said, "On the basis that the Court did not define the word the first time, I will object to any further instruction at this point." Just before the jury returned to the courtroom to deliver its verdict, Mrs. L.'s counsel, apparently thinking his initial objection to be deficient or out of an abundance of caution, declared, "I think for safety of the record, I will object, just for the record...."

Md.Rule 2–520(e) provides in pertinent part:

"(e) *Objections.*—No party may assign as error the giving or the failure to give an instruction unless the party objects on the record *promptly after the court instructs the jury, stating distinctly the matter* to which the party objects *and the grounds* of the objection. Upon request of any party, the court shall receive objections out of the hearing of the jury." (Emphasis supplied.)

Counsel's objection was directed to the fact that the court had not previously defined the word "harbor." There was no objection to the content of the instruction. There was no claim of error in the instruction. The objection as made does not meet the requirement of Rule 2–520(e), and we do not consider it.

## VI.

*Did the Court err in excluding testimony of a defense witness's state of mind?*

██ A daughter of Mrs. L. testified that teachers and other students were saying things about the daughter when she returned to school after having been hospitalized. When defense counsel asked the girl to relate what was being said about her, she replied, "I am not really sure what [sic] teachers said this, but they were—they were going around telling good friends of mine, that when I was in the hospital, I was in there ..." The judge interrupted the testimony, and he said: "You are asking the witness to say that ... [someone] told her that somebody said something, and that was being offered for the truth, not the words, but that somebody said something ... you are offering it for the truth that a teacher said ... something." Defense counsel responded in the affirmative. He then added that he would "make an offer of proof that relates to what this child did upon hearing [the hearsay]." Counsel was permitted to ask the witness, "As a result [of what you heard others were saying], what effect, if any, did ... [it] have on you?" The daughter responded that "it didn't affect me." Defense counsel was able to show the daughter's state of mind after she heard that people at school had been saying things about her. The child testified that the remarks did not affect her and that she did go to school afterwards. Counsel clearly demonstrated what Mrs. L. now complains she was not able to show. The issue is without merit.

## VI.

*Should the convictions under Educ. Art., § 7-301(e)(1) and (2) have merged?*

Mrs. L. did not raise the issue of lenity at trial; therefore, the issue is not preserved for appeal. Md.Rule 1085. Furthermore, the issue is largely academic, inasmuch as the sentences were made to run concurrently. In light of the fact that we have vacated the sentences and remanded for

resentencing, defense counsel may opt to raise the issue at that time.

## VII.

*Did the trial court impose an unlawful condition of probation?*

In light of the fact that we shall vacate the sentences, the conditions of probation are likewise vacated.

## MRS. P.'S SEPARATE ISSUE

## VIII.

*Was the evidence sufficient to sustain the conviction?*

█ That Mrs. P.'s daughters did not attend school regularly is unmistakable. As is the fact that appellant was made fully aware of the absences as the result of conferences with school officials as well as letters from the school authorities. Mrs. P. testified that she knew her daughters did not go to school and that she allowed them to stay home. The evidence was not only sufficient, it was overwhelming.

IN APPEAL NO. 1032, IN RE: JEANNETTE L., THE CONVICTIONS ON BOTH COUNTS ARE AFFIRMED. THE SENTENCES ARE VACATED AND THE CASE IS REMANDED FOR IMPOSITION OF PROPER SENTENCES.

TWO–THIRDS OF THE COSTS TO BE PAID BY APPELLANT AND ONE–THIRD OF THE COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.

IN APPEAL NO. 1033, IN RE: SHIRLEY P., THE CONVICTION IS AFFIRMED. THE SENTENCE IS VACATED AND THE CASE IS REMANDED FOR IMPOSITION OF A PROPER SENTENCE.

ONE–HALF OF THE COSTS TO BE PAID BY APPELLANT AND ONE–HALF TO BE PAID BY PRINCE GEORGE'S COUNTY.