KALKMAN *vs.* CAUSTEN——*June,* 1830.

K, whose vessel had been, with others, sunk in the harbor of B, in 1814, for its protection from the public enemy, in February, 1821, wrote to C, that " it would be a source of gratification to me, if your exertions are crowned with that success they so justly merit, and I rest assured, that you will interest yourself equally as much for the T's (the name of K's vessel) business, as that of the other vessels entrusted to your management. " C attended to the claim of the owners of the sunken vessels upon the government for indemnity; and on the 5th March, 1823, K enclosed him an order, (without date) on the Secretary of the Treasury, requesting him to pay C, out of the allowance for K's claim, which had been retained at the Treasury on K's account, a certain sum, being C's proportion of said retained money, as stipulated to be paid him for his services and expenses in collecting the proofs relating to the application of the said vessel to the public defence." It appeared that in 1817, K had been discharged from his contracts under the Insolvent Laws of *Maryland,* and in December, 1821, his trustee agreed to allow C a commission for prosecuting the claim of indemnity for K's vessel, in the event of his succeeding, provided the Court would permit the trustee so to do. The whole allowance was, however, retained by the government, and passed to the credit of K's bonds, for duties then unpaid. In an action by C against K, to recover compensation for his services aforesaid: HELD, there was evidence for the jury to find a contract between C and K, and they might as fairly infer that it was entered into a little anterior to the letter of 1821, as before the insolvency of 1817—and that if the plaintiff was to be paid out of the sum to be allowed on account of the vessels, yet if he had been deprived of it by the defendant's means, the defendant was personally liable— that the United States under the circumstances being authorised to retain the allowance in payment of the defendant's bonds, their claim being a just one, and the plaintiff having no lien on the fund in the Treasury, the defendant still remained liable.

APPEAL from *Baltimore* County Court. *Assumpsit* by the appellee, *James H. Causten,* against *Charles F. Kalkman,* the appellant, commenced on the 2d day of July, 1825.

The declaration contained counts for work and labor, goods, wares, and merchandise, the money counts, and an *insimul computassent;* and also two special counts, under which no evidence was offered by the plaintiff.

The defendant pleaded *non assumpsit, non assumpsit infra tres annos* and *actio non accrevit,* &c. General replications and issues joined.

1. The plaintiff to support the issue on his part, offered evidence, that in the year 1814, a number of vessels were sunk at *Fort M'Henry,* for the defence of the city of *Baltimore;* that among them was the ship *Temperance,* owned by the defendant, and to shew the amount of the allowance made by the *United States* in favor of the defendant, he read in evidence the following letters and orders: "*Baltimore,* February 7th, 1821—*Washington City, Jas. H. Causten,* Esq. Dear Sir: I am very thankful for the information you had the goodness in communicating on the 3d inst. (which only got to hand yesterday)—it will be a source of sincere gratification to me, if your exertions are crowned with that success which they so justly merit, and I rest assured that you will interest yourself equally as much for the *Temperance's* business, as that of the other vessels entrusted to your good management. When *Mr. Williams* comes thoroughly to know the situation of the ship owners, whose vessels were one of the principal causes of saving *Baltimore,* that gentleman will, no doubt, throw no impediments in the way of recovering what is so justly and so long since due. *Chas. Fredk. Kalkman.*"

"The honorable *William H. Crawford,* Secretary of the Treasury—Sir: Please pay to *Mr. James H. Causten,* (out of the money retained at the Treasury for my account, say $1995 62, being the allowance awarded to me by the Secretary of the Navy, for the detention of my ship *Temperance,* under the act of 26th April, 1822, 'An act for

the relief of sundry citizens of *Baltimore*') the sum of $399 12; the same being his proportion of said retained money, as stipulated to be paid to him for his services and expenses in collecting the proofs relating to the application of said vessel to the public defence; representing the merits of the case before Congress, which obtained the passage of said law, and liquidating the ratio of compensation due to said vessel, under said law, before the Secretary of the Navy and the first Comptroller of the Treasury. With much respect, I am, sir, your most obedient servant, *Chas. Fredk. Kalkman.*"

" *Baltimore,* March 5th, 1823. Dear Sir: In conformity to your wish, I now enclose, (signed by me,) the letter for the Honorable the Secretary of the Treasury, also a letter addressed to *Mr. John J. Thompson,* on the *Temperance's* business. The papers in question, I have not been able to lay my hands on, but left such instructions at home, as will, in all likelihood, procure them. If in a little while hence, you will please call on *Mrs. Kalkman,* for that purpose, they may, with your friendly assistance, probably be found. Be assured, my dear sir, that you have my warmest wishes for your success, as to the irksome and intricate business still in suspense at *Washington;* not for my sake do I wish this, but on your own account, because the sacrifices which you have already made, and are still ready to make, richly entitle you thereto. *Chas. Fredk. Kalkman.*" *Jas. H. Causten,* Esq."

And further, the plaintiff gave in evidence that the said *Causten* had labored diligently, as agent of said owners of ships, and that the allowance awarded by the United States, was owing to the plaintiff's exertions in procuring testimony relative to said claim, &c. and further proved, the value of said services was equal to 20 per cent. on the amount allowed by government. The defendant, to support the issue on his part, proved that the defendant, on the 18th of September, 1817, applied for the benefit of the Insolvent Laws of *Maryland,* and was under said laws duly released; that upon

his said application, *Elias Glenn* was appointed trustee, for the benefit of said *Kalkman's* creditors, and he further offered to prove, that the said trustee entered into a contract with the said *Causten,* touching indemnification for said ship *Temperance,* which is as follows: "*Baltimore,* 12th December, 1821. *Mr. James H. Causten.* Sir: As you have undertaken to go to *Washington* this winter, to attend Congress on the subject of our petition before that honorable body, respecting the claim we have preferred, for unsatisfied damages and losses, sustained by our vessels sunk at the entrance of this harbor in the month of September, 1814, under the requisition of the commander in chief General *Samuel Smith,* whereby this important post, including *Fort M'Henry,* was saved from destruction, by the impediment which they presented to the passage of the enemies ships of war. We therefore hereby constitute you our agent for the above purpose, and request you will pay the necessary attention thereto; and in the event of your succeeding in obtaining the passage of a bill for our indemnity, we agree to allow you at the rate of twenty per cent. on whatever sum or sums we may receive, and which, through your agency and attention, may be authorised by law of Congress, to be paid to us respectively, whether it be by reference to the Secretary of the Navy or War, or other departments of the government. In the course of your stay at *Washington,* you will please to communicate occasionally with any one of us for the information of the whole, as well as for our government, in case we should deem it requisite to instruct you further on the subject. *Henry Payson & Co.* Attorneys of *Obed Mitchell,* owner of ship *Mars,* &c."

"I agree, as trustee of *Chas. F. Kalkman,* to allow the above commission, provided the Court will permit me to do so. *K* was the owner of ship *Temperance. Elias Glenn,* trustee of *Kalkman,* December 12th, 1821." "*John Brice,* trustee of *J. H. Causten,*" and further proved that, upon *Causten's* application to said trustee, he referred him to *Kalkman* for information, and the correspondence on the

subject of indemnification for said ship *Temperance*, the said trustee having no knowledge of the claim. The plaintiff further proved by *Doctor M'Culloh*, Deputy Collector of the port of *Baltimore*, that by order of the government, the sum of $1995 62 was, after the said allowance to the owners of said vessel the *Temperance*, passed to the credit of said defendant, on certain custom house bonds given by said defendant, to the United States. Thereupon the defendant prayed of the Court the following directions to the jury.

*First.* That the plaintiff has adduced no evidence of any undertaking between him and the defendant, touching services for indemnification for the ship *Temperance;* by which the said *Kalkman* is liable to the said *Causten*, and that the plaintiff therefore is not entitled to recover.

*Second.* That if the jury shall believe, that the contract, if any existed between the plaintiff and defendant, was, that the plaintiff should receive his compensation, if any, out of the funds which should be awarded by the United States in favor of the ship *Temperance*, and that no part of said fund ever came to the hands, or was at the disposal of said defendant, or his trustee aforesaid, *Elias Glenn*, and that said *Kalkman* directed the Secretary of the Treasury of the United States, to pay the said *Causten* the said compensation, by an order received by the said *Causten*, from said *Kalkman*, upon the said Secretary, then the plaintiff is not entitled to recover.

*Third.* That if the jury shall find that the contract between *Causten and Kalkman*, (if any such shall be found by the jury to have been made) was made before said *Kalkman's* application for the benefit of the insolvent laws of *Maryland;* then the said *Kalkman* was by his release under the said laws, discharged from said contract, and the plaintiff is not entitled to recover, except subject to said release, and the provisions of said insolvent laws. Which directions, as prayed in the *first* and *second* prayers, the Court (Archer C. J. Hanson and Kell, A. J.) refused to give, but gave the direction prayed in the *third* prayer. The defen-

dant excepted, and the verdict and judgment being against him, he prosecuted the present appeal.

The cause was argued before BUCHANAN, Ch. J., and EARLE, MARTIN, and STEPHEN J.

*Mayer* and *Frick,* for the appellant, contended,

1. That the contract, if any, was that the plaintiff should be compensated out of the fund which should be awarded to the ship *Temperance,* and that no part of said fund ever came to the hands, or was at the disposal, of the defendant, or of the trustee, and that defendant has fulfilled such contract by giving the order on the Secretary of the Treasury, dated 5th March, 1823.

2. That if the said compensation was not payable out of the funds above mentioned, then that no other contract has been proved, by which the said defendant was liable, at the institution of the suit; said suit having been brought on the 2d of July, 1825, and the contract, if any, for payment by *Kalkman,* having taken place in the year 1814. They referred to 3 *Wilson,* 207. 1 *Chitty on Bills,* 60, 63, 64. *Montgomerie vs. Ivers.* 17 *Johns. Reps.* 38. *Wetter vs. Rucker,* 5 *Serg. & Low.* 160. 1 *Peters* 193. *Ib.* 406, 439, 441, 442. *Ib.* 216. *On the second point to Oliver vs. Gray,* 1 *Harr. & Gill,* 204. *Buller vs. Harrison, Cowp.* 565.

*Hoffman,* for the appellee.

1. It does not appear when *Causten's* services as an agent commenced, but it is shown that he was engaged in 1821, and that in 1822, the act of Congress, for the compensation of the defendant, was passed. Whether, therefore, he was to be paid out of the fund, or by the parties, it is clear he was not to be paid, until the law passed, and the amount was ascertained by the award of the Commissioners, as the amount of the compensation which the plaintiff was to receive, depended on the amount to be awarded to the defendant. This award was not made until 1823, and as the suit was brought in 1825, limitations cannot be a bar.

2. The question is not whether the order, which *Kalkman* gave to *Causten,* was, or was not, a negotiable bill of exchange. It was an order, and the law implies a contract on the part of the drawer, to pay the payee the money mentioned in it, provided it is not paid by the drawee. But it was a bill of exchange, as between the drawer and payee, although the negotiable words are omitted. *Chitty on Bills,* 85, 86, 140, 144. The bill was not payable on a contingency—it was drawn on a fixed and certain fund in the hands of the drawee, and was absolute in its terms. It is not material, however, what the instrument may be called. It created a responsibility on the part of the drawer to pay, if the fund on which it was drawn should prove inadequate. *Montgomerie vs. Ivers.* 17 *Johns. Rep.* 38. *Chitty on Bills,* 121.

The record contains abundant proof to support the judgment independent of the order. The letter written by the defendant in 1821, shows that the plaintiff was then engaged in his service, and it requests him still to continue his exertions—these exertions were successful, and the money which was the fruit of them, was applied to the satisfaction of *Kalkman's* debts, and the plaintiff therefore is entitled to recover on the count for money paid.

EARLE J. delivered the opinion of the Court.

Our reflections on this case, have led us to the conclusion tha the Court below were right, in refusing to give the directions prayed in the *first* and *second* prayers of the defendant, who is the appellant here. (The Judge here stated the facts of the case.) This being the testimony in behalf of the plaintiff, it is not easy to conceive how the Court could have given to the jury the directions asked in the first prayer—" that the plaintiff had adduced no evidence of any undertaking between him and the defendant, touching services for indemnification for the ship *Temperance,* by which the said *Kalkman* is liable to the said *Causten,* and that the plaintiff is not therefore entitled to recover." The

evidence of the defendant's undertaking, looked them full in the face, and his liability under it seems without doubt. The time of the contract between the parties, is not ascertained, and was a proper subject for the jury, who might as fairly infer, that it was entered into a little anterior to the letter of the 7th of February, 1821, as that it bore date before the in-solvency in 1817. And if the meaning of the prayer is, that the defendant's undertaking is barred by time, as was sug-gested by the counsel, the answer is, that the services were not performed until some time in the year 1822, and in March, 1823, the order on the Secretary acknowledges the justice of the plaintiff's demand, and that it was then a sub-sisting debt.

The Court's rejection of the instructions required in the second prayer, is also entitled to our decided appro-bation. If, under the contract, the plaintiff's compen-sation for services rendered was to be paid out of the sum allowed by the government, it does not necessarily follow that it cannot be recovered of the defendant. The personal remedy is unquestionable, if the plaintiff has been deprived of his compensation out of the funds, by the defendant's means, the fund here has not, in truth, come to his hand, nor is it now at the disposal of himself, or his trustee, but it has been snatched from the plaintiff, and wholly applied by the *United States*, to the payment of a debt due to them by the defendant, the justice of which he does not pretend to deny. The moment of appropriation by the *United States* is not known ; neither is it worth inquiring into. The plaintiff had no lien upon the fund, arising out of the order, even if it had been presented before the money was applied to the payment of the custom house dues. It is not a bill of exchange, nor is the transaction within the pale of the law merchant, and there was no greater obligation on the *United States*, to pay in parcels, the sum awarded to *Kalkman*, than rests upon every private debtor, who has to pay a sum of money to a single individual creditor. If the *United States* had answered the order, it would have justified the pay-

OF MARYLAND. 365

State, use of, &c. vs. Boyd.—*June*, 1830

ment to *Causten*, and this is the only valuable legal purpose it could have been made to answer. But it has been in argument contended, that the *United States* had no authority to apply this fund to the payment of the custom house demand, inasmuch as it had been previously disposed of by the insolvent laws of Maryland, and belonged to the trustee of *Kalkman*. If this be so, it affords a substantial reason why *Kalkman's* order should not have been paid to *Causten* by the Secretary of the Treasury. There is, however, nothing in the objection. Had this money been paid to the trustee, the *United States* would have been entitled to it, to satisfy the custom house bonds, the act of Congress of 1799, ch. 128, giving them a priority of payment, in the disposition of insolvents' estates. 1 *Peters*, 438, 439, and the trustee would have had to perform the useless ceremony of receiving with one hand to pay with the other. Under whatever aspect this case can be considered, we think *Baltimore* County Court were correct, in refusing to instruct the jury, as prayed for by the defendant, and their judgment is affirmed.

**JUDGMENT AFFIRMED.**