861 A.2d 78

**Jimmy L. DAVIS**

v.

**Patricia Ann SLATER.**

**No. 26 Sept. Term, 2004.**

Court of Appeals of Maryland.

Nov. 15, 2004.

**600**

Bruce A. Plaxen (Jonathan A. Kopin of Plaxen & Adler, P.A., on brief), Columbia, for appellant.

Robert K. Nead (Nead, Karey & Minton, L.L.P., on brief), Towson, for appellee.

ARGUED BEFORE: BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, and GREENE, JJ.

BATTAGLIA, J.

Petitioner, Jimmy L. Davis [hereinafter "Davis"], comes before this Court to challenge the trial court's denial of his Motion to Strike Jury Demand. Davis argues that when he reduced his *ad damnum* clause from Twenty–Five Thousand Dollars to Ten Thousand Dollars by amending his complaint, the Respondent, Patricia Ann Slater [hereinafter "Slater"], who had elected a jury trial, was no longer entitled to a jury trial. Because we do not interpret Article 23 of the Declaration of Rights or Section 4–402(e)(1) of the Courts and Judicial Proceedings Article as divesting parties in civil cases of their common law entitlement to a jury trial where the amount in controversy fails to exceed Ten Thousand Dollars, we affirm the denial of the Motion to Strike Jury Demand.

## I. Facts and Procedural History

On Monday, July 26, 1999, at approximately 2:20 p.m., Slater collided with a 1995 Plymouth Neon driven by Davis while it was stopped at a red light just beyond the off-ramp from I–695 on Moravia Road in Baltimore County, Maryland. An ambulance arrived at the scene and transported Davis to Bay View Hospital.

On May 29, 2001, Davis filed a complaint in the District Court of Maryland for Baltimore County requesting twenty-five thousand dollars in damages and the costs of maintaining the action. One month later, Slater filed her Answer and properly elected a jury trial pursuant to Maryland Code (1974, 1999 Repl.Vol.), Section 4–402(e)(1) of the Courts and Judicial Proceedings Article.[1] On July 12, 2001, the District Court

---

1. Md.Code (1974, 1999 Repl.Vol.), § 4–402(e)(1) of the Courts and Judicial Proceedings Article provides:

 (e) *Jury trial.*—(1) In a civil action in which the amount in controversy exceeds $10,000, exclusive of attorney's fees if attorney's fees are recoverable by law or contract, a party may demand a jury trial pursuant to the Maryland Rules.

 The language of Section 4–402(e)(1) remains unchanged in the 2002 Replacement Volume of the Code. *See* Md.Code (1974, 2002 Repl.Vol.), § 4–402(e)(1) of the Courts and Judicial Proceedings Article.

transferred the action to the Circuit Court for Baltimore County. For the next 18 months, both parties engaged in discovery.

On February 11, 2003, Davis filed an Amended Complaint reducing his *ad damnum* demand to Ten Thousand Dollars. Davis then filed his Motion to Strike Jury Demand and Request for Hearing on August 13, 2003, relying upon Section 4–402(e)(1) of the Courts and Judicial Proceedings Article and Article 23 of the Maryland Declaration of Rights.[2] Slater's response, filed on August 25, 2003, also relied on Section 4–402(e)(1) of the Courts and Judicial Proceedings Article and the provisions contained in Maryland Rule 2–325(f).[3] On October 20, Judge Ruth A. Jakubowski denied Davis's Motion to Strike Jury Demand without a hearing.

At trial on December 10, 2003, Davis renewed his Motion to Strike Jury Trial, and Judge J. Norris Byrnes denied the Motion. The jury was selected and empaneled. At the close of evidence, Davis again renewed his Motion to Strike Jury Trial, which was denied. After closing arguments, the jury deliberated and returned a verdict in favor of Davis in the amount of $727.03 plus interest and costs.

Davis noted an appeal to the Court of Special Appeals, and this Court issued, on its own initiative, a writ of certiorari, *Davis v. Slater,* 381 Md. 673, 851 A.2d 593 (2004), prior to any proceedings in the intermediate appellate court. Davis's brief presented the following question for our review:

Did the Circuit Court erroneously order that Petitioner's claim for $10,000 should properly be heard by a jury?

We conclude that the Circuit Court was correct and affirm its denial of Davis's Motion to Strike Jury Trial.

---

**2.** Maryland Declaration of Rights Art. 23 provides:

The right of trial by Jury of all issues of fact in civil proceedings in the several Courts of Law in this State, where the amount in controversy exceeds the sum of $10,000, shall be inviolably preserved.

**3.** Md. Rule 2–325(f) states:

An election for trial by jury may be withdrawn only with the consent of all parties not in default.

## II. Standard of Review

■ The resolution of whether a jury trial was proper under the circumstances of this case requires us to construe the meaning of Articles 5 and 23 of the Maryland Declaration of Rights, Section 4–402(e)(1) of the Courts and Judicial Proceedings Article, and Maryland Rule 2–325(f). Because our interpretation of the Maryland Declaration of Rights and Constitution, provisions of the Maryland Code, and the Maryland Rules are appropriately classified as questions of law, we review the issues *de novo* to determine if the trial court was legally correct in its rulings on these matters. *See e.g., J.L. Matthews, Inc. v. Maryland–National Capital Park and Planning,* 368 Md. 71, 93–94, 792 A.2d 288, 301 (2002); *Pickett v. Sears, Roebuck & Company,* 365 Md. 67, 77, 775 A.2d 1218, 1223 (2001); *Calomiris v. Woods,* 353 Md. 425, 435, 727 A.2d 358, 363 (1999).

■ When interpreting constitutional provisions, we generally employ the same rules of construction that are applicable to the construction of statutory language. *Fish Market Nominee Corp. v. G.A.A., Inc.,* 337 Md. 1, 8, 650 A.2d 705, 708 (1994); *Brown v. Brown,* 287 Md. 273, 277, 412 A.2d 396, 398 (1980); *Kadan v. Bd. of Sup. of Elections,* 273 Md. 406, 414, 329 A.2d 702, 707 (1974); *New Cent. Co. v. George's Creek Co.,* 37 Md. 538 (1873). Similarly, the principles applied to statutory interpretation are also used to interpret the Maryland Rules. *Beyer v. Morgan State University,* 369 Md. 335, 350, 800 A.2d 707, 715 (2002); *Pickett v. Sears, Roebuck & Co.,* 365 Md. 67, 78, 775 A.2d 1218, 1224 (2001); *see generally Johnson v. State,* 360 Md. 250, 265, 757 A.2d 796, 804 (2000). Like construing a statute, to ascertain the meaning of a constitutional provision or rule of procedure we first look to the normal, plain meaning of the language. *Fish Market,* 337 Md. at 8, 650 A.2d at 708; *Luppino v. Gray,* 336 Md. 194, 204 n. 8, 647 A.2d 429, 434 n. 8 (1994); *Rand v. Rand,* 280 Md. 508, 511, 374 A.2d 900, 902 (1977); *Balto. Gas & Elect. Co. v. Board,* 278 Md. 26, 31, 358 A.2d 241, 244 (1976); *Johnson,* 360 Md. at 265, 757 A.2d at 804. If that language is clear and unambiguous,

we need not look beyond the provision's terms to inform our analysis, *Fish Market,* 337 Md. at 8, 650 A.2d at 708; *Rand,* 280 Md. at 511, 374 A.2d at 902; *Johnson,* 360 Md. at 265, 757 A.2d at 804; however, the goal of our examination is always to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision, be it statutory, constitutional or part of the Rules. *Morris v. Prince George's County,* 319 Md. 597, 603–04, 573 A.2d 1346, 1349 (1990), citing *Dept. of Environment v. Showell,* 316 Md. 259, 270, 558 A.2d 391, 396 (1989); *Harford County v. Edgewater,* 316 Md. 389, 397, 558 A.2d 1219, 1223 (1989). To that end, we must consider the context in which the constitutional provision, statute, or rule appears, including related statutes or rules, and relevant legislative history. *Mayor and City Council of Baltimore v. Chase,* 360 Md. 121, 129, 756 A.2d 987, 991–92 (2000), citing *Kaczorowski v. Mayor and City Council of Baltimore,* 309 Md. 505, 515, 525 A.2d 628, 632 (1987); *Johnson,* 360 Md. at 265, 757 A.2d at 804. Also, where the language of the constitutional provision, statute, or rule is ambiguous, external evidence may be referred to for discerning the purpose of the legislature, including the bill's title or function paragraphs, relevant case law, and secondary sources. *Moore v. Miley,* 372 Md. 663, 678, 814 A.2d 557, 567 (2003); *Comptroller of the Treasury v. Clyde's of Chevy Chase, Inc.,* 377 Md. 471, 483, 833 A.2d 1014, 1021 (2003); *Johnson,* 360 Md. at 265, 757 A.2d at 804; *Schuman, Kane, Felts & Everngam, Chartered v. Aluisi,* 341 Md. 115, 119, 668 A.2d 929, 932 (1995); *Kaczorowski,* 309 Md. at 515, 525 A.2d at 633.

### III. Background

Davis contends that the Circuit Court erred as a matter of law when it held that Slater was still entitled to a jury trial despite the fact that the amount in controversy no longer exceeded Ten Thousand Dollars. He relies on the Court of Special Appeals's opinion in *Cheek v. J.B.G. Properties, Inc.,* 28 Md.App. 29, 344 A.2d 180 (1975), to support his assertion that access to a jury trial is triggered solely by the amount in controversy. *Id.* at 47, 344 A.2d at 191–92. Ultimately, Davis

argues that his amendment to the *ad damnum* clause, reducing the amount in controversy from Twenty–Five Thousand Dollars to Ten Thousand Dollars, divested Slater of her entitlement to a jury trial.

Slater counters that, pursuant to Rule 2–325(f), once a party has properly elected a jury trial in a civil case, all parties must consent to waive the entitlement to a jury trial for the case to be heard by the court rather than the jury. She interprets the language in Article 23 of the Declaration of Rights as guaranteeing an entitlement to a jury in suits where the amount in controversy exceeds Ten Thousand Dollars, and asserts, contrary to Davis's position, that the guarantee does not act to forbid a jury trial where the amount in controversy does not exceed Ten Thousand Dollars. In reaching that conclusion, Slater reads the provisions of Articles 5 and 23 of the Declaration of Rights [4] in tandem so that litigants still have the entitlement to a jury trial where the amount in controversy fails to exceed Ten Thousand Dollars, but that, according to the language of Article 5, it is subject to regulation by the General Assembly.[5]

Slater also analogizes the situation before this Court to that in *Thompson v. State*, 278 Md. 41, 359 A.2d 203 (1976), a

---

**4.** Md. Const. Declaration of Rights Art.5 states:

(a) That the Inhabitants of Maryland are entitled to the Common Law of England, and the trial by Jury, according to the course of that Law, and to the benefit of such English statutes as existed on the Fourth day of July, seventeen hundred and seventy-six; and which, by experience, have been found applicable to their local and other circumstances, and have been introduced, used and practiced by the Courts of Law or Equity; and also of all Acts of Assembly in force on the first day of June, eighteen hundred and sixty-seven; except such as may have since expired, or may be inconsistent with the provisions of this Constitution; subject, nevertheless, to the revision of, and amendment or repeal by, the Legislature of this State.

**5.** Slater also asserts that there is no individual entitlement to a bench trial regardless of the amount in controversy. We have previously held that where both parties elect a bench trial, they are afforded a constitutional entitlement to a trial without a jury. *See* Md. Const. Art. IV, Sec. 8(a); *Luppino*, 336 Md. at 210, 647 A.2d at 437. Absent agreement by both parties, however, no such constitutional entitlement attaches. *Luppino*, 336 Md. at 210, 647 A.2d at 437.

criminal case in which a defendant properly demanded a jury trial, which was denied by the trial court when the State decided to nolle prosequi the charge that entitled the defendant to a jury trial. Slater reasons that because a defendant in a criminal case was entitled to a trial by jury at common law even where the "major" criminal violation was dismissed, this Court should reach a similar result in a civil case when the amount in controversy contained in Article 23 is no longer satisfied.

To further emphasize the fundamental nature of the entitlement to trial by jury, Slater relies on this Court's decision in *Pickett v. Sears, Roebuck & Company,* 365 Md. 67, 775 A.2d 1218 (2001), which analyzed the purpose of the Maryland Rules addressing the entitlement to a jury trial and the scope and application of those rules. Drawing on our prior opinion, Slater contends that the rules must be construed in a manner that recognizes the need to preserve the constitutional entitlement to a jury trial and simultaneously enable the reasonable regulation of that entitlement in the public interest. She argues that interpreting the relevant rules in that way reinforces her position that a party cannot unilaterally divest all other parties to the litigation of their entitlement to a properly elected trial by jury.

Slater's major argument concerning the interpretation of the Maryland Rules focuses on Rule 2–325(f), prohibiting the withdrawal of an election for a trial by jury without the consent of all parties to the litigation. She interprets this provision as prohibiting one party from unilaterally divesting another of the entitlement to a jury trial where the election has been properly made. Her analysis of the rule relies in large part on Judge Paul V. Niemeyer's *Maryland Rules Commentary, Second Edition,* which states:

Once a jury trial is properly elected by a party, it becomes the right of any party thereafter to have the case tried before a jury. All parties may rely on the properly filed demand of any other party and need not file an additional demand on their own behalf.... This rule evidences an

intent to preserve and favor the jury trial right even if, to preserve it, a technical expansion might occur.

Judge Paul V. Niemeyer, MARYLAND RULES COMMENTARY, SECOND EDITION, 207 (2d ed.1992).

Slater also discusses Maryland Rule 2–327(a)(2) [6], which requires both parties to consent to a transfer to District Court and to waive any rights to a jury trial that they currently possess or may come to possess in the course of the litigation and appeals process, as a supporting argument. Slater, in her interpretation of the meaning of Rules 2–325(f) and 2–327(a)(2), asserts that if Davis could divest Slater of her entitlement to a properly elected jury trial without her consent, Rules 2–325(f) and 2–327(a)(2) would be rendered meaningless.

Finally, Slater notes that Davis's citation of *Cheek* in support of his position is inapposite. She argues that *Cheek* is not on point, because it addresses the jurisdictional limits of the Circuit and District Courts rather than the "amount in controversy" requirement for the entitlement to a jury trial under Article 23.

## IV. Discussion

To fully understand, and thus properly analyze, the entitlement to demand a jury trial under the common law and Articles 5(a) and 23 of the Declaration of Rights, we must trace its development from its inception, to the English common law in force in the colonies and Maryland's first Constitution, and finally, to the protections presently in force in Articles 5(a) and 23.

---

6. Maryland Rule 2–327(a)(2) provides:
 (2) *If Circuit Court Has Jurisdiction—Generally.* Except as otherwise provided in subsection (a)(3) of this Rule, the court may transfer an action within its jurisdiction to the District Court sitting in the same county if all parties to the action (A) consent to the transfer, (B) waive any right to a jury trial they currently may have and any right they may have to a jury trial following transfer to the District Court, including on appeal from any judgment entered, and (C) make any amendments to the pleadings necessary to bring the action within the jurisdiction of the District Court.

## A. Article 5(a) of the Declaration of Rights

The genesis of the common law jury trial has long been debated by scholars. Some trace its inception to the reign of Alfred the Great (871–899 A.D.), and others to the period of the invasion by William the Conqueror in 1066. Hon. Randy J. Holland, *State Jury Trials and Federalism: Constitutionalizing Common Law Concepts*, 38 Val. U.L.Rev. 373, 376 (2004) [hereinafter "Holland"]. Regardless of its birth date, the jury was well established in various criminal and civil cases during the eleventh and twelfth centuries throughout England. *Id.* The entitlement to a jury trial, however, was not recognized formally by statute, but rather, its use was mandated by custom. *Id.*

The entitlement to a trial by jury was guaranteed in writing for the first time by the Magna Carta on June 15, 1215. *Id.* That document provided that "no freeman would be disseized, dispossessed, or imprisoned except by judgment of his peers." *Id.* The opus further stated, "[t]o none will we well, to none will we deny, to none will we delay right or justice." *Id.* at 376–77. This language guaranteed the entitlement to a jury where freedom or property was at risk and applied to civil and criminal proceedings. During this time jury members were chosen based on their personal knowledge of the events in dispute or their particular expertise in a subject at issue, and acted as a body of witnesses to assist the court. *The Civil Jury*, 110 Harv. L.Rev. 1408, 1416 (1997) [hereinafter "The Civil Jury"].

Eventually, however, the English jury evolved into the adjudicatory body that it is today. *Id.* The first jury trial resembling the modern incarnation occurred at the end of the fifteenth century, with the jury acting as an impartial fact finder. Theodore F.T. Plucknett, A CONCISE HISTORY OF THE COMMON LAW 129–30 (Little, Brown & Co. 5th ed.1956). At that time, as today, the entitlement to a jury trial only applied in cases at law as opposed to those in equity. *See generally,* Ellen E. Sward, *A History of the Civil Trial in the United States,* 51 U. Kan. L.Rev. 347 (2003) [hereinafter "Sward"];

*The Civil Jury, supra; Holland, supra.* Furthermore, the right attached to all civil cases at law regardless of the amount in controversy. *See* 3 William Blackstone, Commentaries, *352 (stating that when a party demands a jury trial in a common law civil action the court automatically "awards a writ of *venire facias* " commanding the sheriff to empanel a jury of twelve).

At least as early as 1642, the Provincial Court of Maryland was conducting civil jury trials in matters of law. *See* Maryland Provincial Court Records, 1637–1650, vol. 4, at 156; *see also* Michael C. Tolley, State Constitutionalism in Maryland, at 187 (1990). By 1776 juries played an increasingly important role in the Colonies. Juries were more inclined to resist objectionable laws imposed by England, which added to their increasing popularity. Charles A. Wolfram, *The Constitutional History of the Seventh Amendment,* 57 Minn. L.Rev. 639, 703–708 (1973). It was held in such high regard that the jury became the preeminent means of trying cases arising under the common law in the newly formed United States. *Sward, supra,* at 373.

The first State Constitution was adopted in Maryland in 1776 and did not explicitly guarantee entitlement to a jury trial in civil proceedings. Rather, in Article 3 of the Declaration of Rights, the drafters stated that "the inhabitants of Maryland are entitled to the common law of England, and the trial by jury, according to the course of that law." Md. Const. Declaration of Rights Art. 3 (1776); at the time, a trial by jury consisted of the presentation of evidence to twelve landowners from the "vicinage," [7] whose verdict was required to be unanimous. *See Holland, supra,* at 377. During the period in which the 1776 Maryland Constitution was in effect, from 1776 to 1850, the Legislature did not regulate or enumerate the types of civil disputes in which parties may demand a jury

---

7. Black's Law Dictionary defines "vicinage" as "the place where a crime is committed or a trial is held; the place from which jurors are to be drawn for trial; esp., the locale from which the accused is entitled to have juror's selected." Black's Law Dictionary, "vicinage" (8th ed.2004).

trial, and no minimum amount in controversy was required for the entitlement to attach. *See* Debates and Proceedings of the 1850 Constitutional Convention, vol. 2 at 767.[8] Article 3 of the 1776 Declaration of Rights became Article 4 of the Declaration of Rights in the 1864 Constitution, Md. Const. Declaration of Rights Art. 4 (1864), and in 1867, it was moved to Article 5 of the Declaration of Rights. Md. Const. Declaration of Rights Art. 5 (1867). In 1992, the original language of Article 5 was amended to include two new subsections permitting juries of less than 12 members in any civil proceeding. 1992 Md. Laws, Chaps. 203 and 204.

It is against this historical backdrop that we examine the plain meaning of Article 5(a). The structure and plain meaning of the language of Article 5(a) of the Declaration of Rights indicate that although the common law as a whole is subject to modification by the legislature, the "trial by Jury" is not. Article 5 of the Declaration of Rights provides in its entirety:

(a) That the Inhabitants of Maryland are entitled to the Common Law of England, and the trial by Jury, according to the course of that Law, and to the benefit of the English statutes as existed on the Fourth day of July, seventeen hundred and seventy-six; and which, by experience, have been found applicable to their local and other circumstances, and have been introduced, used and practiced by the Courts of Law or Equity; and also of all Acts of Assembly in force on the first day of June, eighteen hundred and sixty-seven; except such as may have since expired, or may be inconsistent with the provisions of this Constitution; subject, nevertheless, to the revision of, and amendment or repeal by, the Legislature of this State. And the Inhabitants of Maryland

---

**8.** Civil jury trials were commonplace in Maryland during the period between the first Constitution in 1776 and the first revision in 1851. See e.g., *Kalkman v. Causten*, 2 G. & J. 357 (Md.1830); *Barroll v. Reading*, 5 H. & J. 175 (Md.1821); *Hughes' Lessee v. Howard*, 3 H. & J. 9 (Md.1810); *Boisneuf v. Lewis*, 4 H. & McH. 414 (Md.1799); *Evans v. Bonner*, 2 H. & McH. 377 (Md.1789); *Toogood v. Scott*, 2 H. & McH. 26 (Md.1782) for a sampling of cases that reached this Court after being presented to a jury. There are, however, no statistics available concerning the number of jury trials in this State during that period.

are also entitled to all property derived to them from, or under the Charter granted by His Majesty Charles the First to Caecilius Calvert, Baron of Baltimore.

(b) The parties to any civil proceeding in which the right to a jury trial is preserved are entitled to a jury of at least 6 jurors.

(c) That notwithstanding the Common Law of England, nothing in this Constitution prohibits trial by jury less than 12 jurors in any civil proceeding in which the right to a jury trial is preserved.

Md. Const. Declaration of Rights Art 5. Article 5(a) enumerates three bodies of law to which the people of Maryland are entitled: the English Common Law, the English statutes in effect as of July 4, 1776 that have been found useful by the local government and the courts, and the Acts of Assembly in force in 1867 that are not expired or rendered unconstitutional. In examining the plain meaning and structure of Article 5(a), it is apparent that the phrase "subject, nevertheless, to the revision of, and amendment or repeal by, the Legislature of the State" applies to those three collections of law. The clause applies to the English common law in particular because, as we have held, the common law described in Article 5(a) is "the common law in mass, as it existed here, either potentially, or practically, and as it prevailed in England at the time, *except* such portions of it as are inconsistent with the spirit of that instrument [the Declaration of Rights], and the nature of our new political institutions." *State v. Buchanan*, 5 H. & J. 317, 358 (1821) (emphasis added).

The commas surrounding the words ",and the trial by Jury," however, indicate that it should be viewed as a provision independent of the entitlement to the common law provision, although its language is a guarantee of its entitlement by the citizenry. Specifically, the use of the word "the" as opposed to "a" indicates that the phrase refers to the institution of "trial by jury" as opposed to merely a proceeding before a jury. As such, the clause permitting the legislature to alter the common law or statutes in effect cannot be interpreted as applying to the "trial by Jury" contained in Article 5(a), because the "trial

by Jury" as an institution exists independent of the law governing its use.

■ Prior opinions by this Court are consistent with this plain meaning interpretation. We have invariably held that the provision concerning the jury trial denotes "the historical trial by jury, as it existed when the constitution of the state was first adopted." *Bryan v. State Roads Comm'n of the State Highway Admin.*, 356 Md. 4, 9, 736 A.2d 1057,1060 (1999), quoting *Knee v. Baltimore City Passenger Railway*, 87 Md. 623, 624, 40 A. 890, 891;[9] *Luppino*, 336 Md. at 201, 647 A.2d at 432, quoting *Houston v. Lloyd's Consumer Acceptance Corp.*, 241 Md. 10, 20, 215 A.2d 192, 198 (1965). We have indicated that the fundamental aspects of the jury trial are not subject to change by the General Assembly. *See e.g., Bryan,* 356 Md. at 9, 736 A.2d at 1060; *Knee,* 87 Md. at 627, 40 A. at 892; *Higgins v. Barnes,* 310 Md. 532, 542, 530 A.2d 724, 729 (1987). These fundamental aspects include "the 12–man jury, the presence and superintendence of a judge having the power to instruct the jury on the law and to advise them upon the facts, and the unanimous verdict." *State v. McKay,* 280 Md. 558, 563, 375 A.2d 228, 231 (1977), citing *Patton v. United States,* 281 U.S. 276, 288, 50 S.Ct. 253, 74 L.Ed. 854 (1930). The General Assembly itself has recognized this limitation on its power to alter the fundamental aspects of the common law jury trial when it proposed legislation permitting six member juries in civil cases through ratification by constitutional amendment rather than by statute. *See* 1992 Md. Laws, Chap. 203 and 204; *Bryan,* 356 Md. at 9–14, 736 A.2d at 1060–63.

---

**9.** In *Bryan,* we addressed, in an opinion by Judge Eldridge, the application of the constitutional amendments to Article 5, changing the jury set forth in that Article from a twelve person jury to that of a six person jury in all civil proceedings. *Bryan,* 356 Md. at 13–14, 736 A.2d at 1062. Because Article 5 changed a fundamental aspect of the traditional jury with respect to "all civil proceedings," we determined that it applied to condemnation proceedings governed by Article III, Section 40 of the Maryland Constitution as well. *Id.* at 14, 736 A.2d at 1062–63.

■ The judicially created body of law known as the "common law," however, is not insulated from alteration by the General Assembly. This Court has continually observed that "[a]lthough the inhabitants of Maryland are entitled to the common law, that law is subject to modification by legislative acts or by decisions of this Court." *Baltimore Sun Co. v. Mayor and City Council of Baltimore,* 359 Md. 653, 662, 755 A.2d 1130, 1135 (2000); *Jones v. State,* 303 Md. 323, 337 n. 10, 493 A.2d 1062, 1069 n. 10 (1985) ("The common law rule may, within constitutional constraints, be changed or modified by legislative enactment or judicial decision where it is found to be a vestige of the past, no longer suitable to the circumstances of our people."). The common law, which is subject to alteration, includes the law governing the entitlement to demand a jury trial in a particular case. *See McKay,* 280 Md. at 568, 375 A.2d at 234; *Lickle v. Boone,* 187 Md. 579, 582, 51 A.2d 162, 163 (1947); *Higgins,* 310 Md. at 542, 530 A.2d at 729; *Thompson v. State,* 278 Md. 41, 52, 359 A.2d 203, 209 (1976) (stating it may be constitutional to limit access to a jury with respect to charges of petty offenses); *Danner v. State,* 89 Md. 220, 223–24, 42 A. 965, 967 (1899); *In re Glenn,* 54 Md. 572, 574–76 (1880); Md. Rule 3–701 (providing for a small claims docket with limited discovery and informal proceedings).[10]

In an opinion authored by Judge Eldridge, this Court interpreted the entitlement to a jury trial at common law in criminal cases in *Thompson v. State,* 278 Md. 41, 359 A.2d 203 (1976), which is instructive to our analysis here. In that case, the defendant, Thompson, was charged with three violations of the motor vehicles laws, only one of which carried a maximum penalty that entitled Thompson to demand a jury trial under Section 4–302(d) of the Courts and Judicial Proceedings Article. *Id.* at 44, 359 A.2d at 205. Thompson demanded a jury

---

10. We do not address the issue of whether the entitlement to demand a jury trial exists in small claims cases because the amount in controversy in the present case exceeds the jurisdictional limit of the small claims docket. *See* Md.Code (1974, 2002 Repl.Vol.) § 4–405 of the Courts and Judicial Proceedings Article.

trial prior to trial in District Court, and the case was transferred to the Criminal Court of Baltimore. *Id.* When the case was called for trial, the State entered a nolle prosequi with respect to the charge that entitled Thompson to demand the jury trial. *Id.* at 45, 359 A.2d at 205. Thompson again demanded a jury trial, or alternatively, for the remaining charges to be returned to the District Court. *Id.* The trial judge denied his demand for a jury trial and refused to transfer the case to the District Court. *Id.* Thompson was convicted. *Id.*

We determined that Section 4–302(d) did not remove the right to demand a jury trial in the Criminal Court. *Id.* at 53, 359 A.2d at 209. We found nothing in the Maryland Code or the Maryland Rules that purported to remove the common law entitlement to a jury trial in the Criminal Court. *Id.* at 53, 359 A.2d at 210. Therefore, we held that once Thompson made a timely demand for a jury trial, and jurisdiction vested in the Criminal Court, he became entitled to a jury trial at common law regardless of whether the remaining offenses were petty ones, because the General Assembly had not abrogated the common law providing access to a jury in the court of general jurisdiction despite its power to do so in petty cases. *Id.*

Davis asserts, nevertheless, that the General Assembly has acted to take away the common law entitlement to trial by jury where the amount in controversy is Ten Thousand Dollars or less through Section 4–402(e)(1) of the Courts and Judicial Proceedings Article. Section 4–402(e)(1) states:

> In a civil action in which the amount in controversy exceeds $10,000, exclusive of attorney's fees if attorney's fees are recoverable by law or contract, a party may demand a jury trial pursuant to the Maryland Rules.

Concerning the General Assembly's ability to change the common law, we have stated that "statutes are not presumed to make any alterations in the common law further than is expressly declared ... a statute, made in the affirmative without any negative expressed or implied, does not take

away the common law." *Lutz v. State,* 167 Md. 12, 15, 172 A. 354, 356 (1934); *see Witte v. Azarian,* 369 Md. 518, 533–34, 801 A.2d 160, 169–70 (2002); *Board of County Commissioners of Garrett County, Maryland v. Bell Atlantic–Maryland, Inc.,* 346 Md. 160, 179, 695 A.2d 171, 178 (1997); *Equitable Life Assurance Society of the United States v. Jalowsky,* 306 Md. 257, 263, 508 A.2d 137, 140 (1986).

The General Assembly, however, has not used express terms to abrogate the common law entitlement to a jury through Section 4–402(e) in either the text of the section or its legislative history. *See* 1973 Md. Laws, Chap. 2 (1st Sp.Sess.). For a statement of this principle, see *Lutz, supra; Witte,* 369 Md. at 533–34, 801 A.2d at 169–70; *Board of County Commissioners of Garrett County, Maryland,* 346 Md. at 179, 695 A.2d at 178; *Equitable Life Assurance Society of the United States,* 306 Md. at 263, 508 A.2d at 140. Thus, we conclude that Section 4–402(e)(1) of the Courts and Judicial Proceedings Article does not abrogate the common law entitlement to a jury trial when the amount in controversy fails to exceed Ten Thousand Dollars.

As in *Thompson,* an extensive search of the Maryland Code has failed to produce an instance where the General Assembly has acted to change the common law governing jury trials in courts of general jurisdiction. Because there are no statutes, rules, or judicial opinions purporting to limit jury trials in civil actions arising under the common law, the common law recognizing the entitlement to a jury trial in civil cases at law in courts of general jurisdiction remains.

### B. Article 23 of the Declaration of Rights

Because Davis's argument principally rested on interpreting the language of Article 23 of the Declaration of Rights, we begin by examining the history of the provision to illuminate our analysis of Article 23's effect on the common law entitlement to a jury trial in civil cases at law.

The Constitution drafted at the 1850 Convention was the first in Maryland history to insulate the common law entitle-

ment to a jury trial, with respect to a subset of civil cases, from any infringement by the General Assembly interjecting an "amount in controversy" over which the entitlement to a jury trial was to be "inviolably preserved." Article X, Section 4, provided:

> The trial by jury of all issues of fact in civil proceedings, in the several courts of law in this State, where the amount in controversy exceeds the sum of five dollars, shall be inviolably preserved.[11]

This amendment was introduced to remedy the absence of an explicit guarantee in "the Constitution of Maryland for the trial by jury in civil cases. The Federal Government had a provision, but it was only applicable to the Federal courts." Proceedings and Debates of the 1850 Constitutional Convention, vol. 2, at 766.[12] Although there is nothing in the surviving records from that Convention that provides a rationale for the inclusion of an "amount in controversy" requirement or the language of "inviolably preserved," we do know that the Convention's delegates were concerned that Article 3 of the Declaration of Rights permitted the General Assembly to encroach upon the availability of a jury trial under the common law, although it had yet to do so. *Id.* at 767.

After its ratification, Article X, Section 6 continued, without alteration, as Article XII, Section 5 of the Constitution of 1864. The 1867 Constitution merely modified the language of the provision, without substantive change, and reenacted the guarantee as Section 6 of Article XV, Miscellaneous. That section

---

11. To keep this amount in perspective, it would take approximately $117.06 in 2003 dollars to exercise the purchasing power that $5 had in 1850. John J. McCusker, *Comparing the Purchasing Power of Money in the United States (or Colonies) from 1665 to Any Other Year Including the Present*, Economic History Services, 2004, URL: http://www.eh.net/hmit/ppowerusd/.

12. As we noted in *Bringe v. Collins*, 274 Md. 338, 341-42, 335 A.2d 670, 673 (1975), even after the adoption of the Fourteenth Amendment, the Supreme Court has "consistently held that the Seventh Amendment is not incorporated into the Fourteenth Amendment, and consequently is not applicable to state court proceedings."

contained the language that is currently contained in Article 23 of the Maryland Declaration of Rights, with the exception of the dollar amount, and stated:

> The right of trial by jury of all issues of fact in civil proceedings in the several Courts of Law in this State, where the amount in controversy exceeds the sum of five dollars, shall be inviolably preserved.

In 1970, Article XV, Section 6 was amended to raise the amount in controversy to Five Hundred Dollars. 1969 Md. Laws, Chap. 789 (effective with the District Court on July 5.1971). In 1977, Article XV, Section 6 was recodified as Article 23 of the Declaration of Rights. 1977 Md. Laws, Chap. 681. The amount in controversy was then increased to Five Thousand Dollars in 1992. 1992 Md. Laws, Chaps. 205 and 206. The final modification of the requisite amount in controversy occurred in 1998 and increased the amount in controversy to the present Ten Thousand Dollar requirement.1998 Md. Laws, Chap. 322.

■ Despite Davis's argument to the contrary, Article 23 cannot be interpreted as changing the entitlement to a jury trial at common law. Rather, Article 23 carves out a segment of the cases in which a trial by jury can be elected without infringement by the Legislature. *See* Proceedings and Debates of the 1850 Constitutional Convention, vol. 2, at 766–67. "Inviolable," from "inviolably preserved," in its plain meaning, is defined as "prohibiting violation; secure from destruction, violence, infringement, or desecration; incapable of being violated; incorruptable, unassailable." THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE, inviolable, (2d ed. Unabridged, 1987). As a result, a jury trial in that class of cases over a statutory amount in controversy cannot be abrogated; below that amount the common law entitlement to demand a jury trial exists, although capable of abrogation by the General Assembly, which has chosen not to do so. There is nothing in the ordinary meaning of "inviolable" or the imposition of an amount in controversy requirement that can reasonably be interpreted to divest the cases entitled to trial

by jury under the common law of that entitlement in courts of general jurisdiction.

Davis's reliance on *Cheek v. J.B.G. Properties, Inc.,* 28 Md.App. 29, 344 A.2d 180 (1975), is misplaced. *Cheek* arose out of an action for slander against the apartment manager and corporate landlord responsible for an apartment complex. *Id.* at 30, 344 A.2d at 182. The jury returned a verdict for the plaintiff, and the trial judge entered a judgment notwithstanding verdict (JNOV) after deciding that the jury wrongfully apportioned the punitive damages awards between the two defendants. *Id.* at 36, 344 A.2d at 185. Several weeks after entering a JNOV, the trial judge decided that the judgment that he had entered was "below the jurisdiction of the court" and ordered it to be vacated and replaced with a judgment of "non-pros" pursuant to what was then Maryland Rule 653.[13] *Id.* at 36, 344 A.2d at 186. The Court of Special Appeals determined that the use of a JNOV to reduce the jury verdict was improper and that the entry of "non-pros" was without effect because the lower court had already been divested of jurisdiction. *Id.* at 43, 46, 344 A.2d at 189–90, 191.

Davis relies on the dicta from *Cheek* that "[t]he availability of the constitutional guarantee [to a jury trial] and its Code companion relating to District Court jurisdiction, is obviously dependent not on the size of the verdict, but on the 'amount in controversy.' " *Id.* at 47, 344 A.2d at 192. Nevertheless, the Court of Special Appeals was referring to the amount in controversy requirement for an "inviolable" entitlement to a jury trial under former Article XV, Section 6 of the Maryland Constitution, a predecessor to Article 23 of the Declaration of Rights, to attach, in the context of whether the District Court

---

**13.** Former Maryland Rule 653 provided:

> Where by reason of the verdict of a jury being below the jurisdiction of the court, a judgment of *non pros* is entered, the record of such judgment shall be a bar to any action founded upon the same cause of action in any court, the limit of whose jurisdiction shall be greater than the amount of such verdict; but the amount of such verdict less such costs as may be adjudged against the plaintiff, shall be a debt from the defendant to the plaintiff, recoverable in the District Court.

There are no equivalent provisions in the recodified Rules.

had jurisdiction. *Id.* The Court of Special Appeals did not address the scope of the entitlement to a jury trial under the common law. Its true focus was attempting to reconcile former Rule 653 and the jurisdictional limitations of the then newly-formed District Courts. *See Cheek,* 28 Md.App. at 48–49, 344 A.2d at 192–93. The language quoted by Davis, when analyzed in its proper context, does not affect our conclusion that Article 23 of the Declaration of Rights does not abrogate the common law entitlement to a trial by jury in civil cases at law.

### V. Maryland Rule 2–325(f)

 It is undisputed that Slater made a timely demand for a jury trial in the District Court, which immediately vested the Circuit Court with jurisdiction.[14] Because Davis did not divest Slater of her entitlement to a jury trial when he amended his *ad damnum* clause, Davis is subject to the Maryland Rule 2–325(f) governing withdrawal of jury trial demands. Where the election was properly made, a jury demand may only be withdrawn with the consent of all parties to the litigation not in default. Md. Rule 2–325(f). This rule secures the right of any party to "rely on the properly filed demand of any party." Judge Paul V. Niemeyer, Maryland Rules Commentary, 207 (2 ed.1992). As a result, Davis was required to obtain Slater's consent to strike the request for a jury trial under Rule 2–325(f). Because he did not, the Circuit Court properly denied his Motion to Strike Jury Demand.[15]

---

**14.** Slater cited our opinion in *Pickett v. Sears, Roebuck & Co.,* 365 Md. 67, 775 A.2d 1218 (2001), for the proposition that the Maryland Rules regulating the entitlement to a jury trial must be interpreted in such a way as to preserve the entitlement and regulate its exercise in the public interest, *id.* at 90, 775 A.2d at 1231, which is an accurate statement of the principles involved in that case. We do not address the reasoning and holding in *Pickett* at length because it addressed the issue of whether a jury demand was timely under Rules 3–131 and 3–325. In the present case, there is no dispute that Slater made a timely demand for a jury trial, and therefore, we have no need to address the issue.

**15.** Davis also raised the issue of the Circuit Court's jurisdiction when he challenged Slater's demand for a jury trial. Although not properly

## VI. Conclusion

Under the common law, all parties to all civil cases at law are entitled to a trial by jury subject to regulation by the General Assembly. The General Assembly has failed to limit the entitlement to a jury trial in Circuit Court civil cases where the amount in controversy is less than the Ten Thousand Dollar amount in controversy contained in Article 23 of the Declaration of Rights.[16] Therefore, Slater continued to be

---

before us on this Appeal because the parties are no longer contesting jurisdiction, we feel the issue of jurisdiction requires some explanation due to our reasoning.

Davis asserted that because he lowered his *ad damnum* clause, he not only divested Slater of her entitlement to a jury trial, but also divested the Circuit Court of jurisdiction. He argued that his claim was now within the exclusive jurisdiction of the District Court under Courts and Judicial Proceedings section 4–401.

Section 4–401(1) provides in relevant part:

(1) An action in contract or tort, if the debt or damages claimed do not exceed $25,000, exclusive of prejudgment or postjudgment interest, costs, and attorney's fees if attorney's fees are recoverable by law or contract.

As we have held, the request for a jury trial immediately divests the District Court of jurisdiction and vests it in the Circuit Court. *See Vogel v. Grant*, 300 Md. 690, 696, 481 A.2d 186, 189 (1984); *Carroll v. Housing Opportunities Commission*, 306 Md. 515, 518, 510 A.2d 540, 542 (1986); *Martin v. Howard County*, 349 Md. 469, 476, 709 A.2d 125, 129 (1998). Therefore, because Slater remained entitled to a jury trial when the amount in controversy was reduced to Ten Thousand Dollars, the Circuit Court properly retained jurisdiction. When Davis wished to transfer this case back to District Court he was subject to the requirements of Maryland Rule 2–327(2). Absent Slater's consent to the transfer and waiver of any entitlement to a jury trial that both parties possessed at the time of transfer, Davis was not entitled to the transfer to the District Court. The Circuit Court properly denied his motion to do so.

**16.** There is one anomaly in the law that is not applicable to the present case. Pursuant to Section 4–402 of the Courts and Judicial Proceedings Article, parties to a civil action where the amount in controversy exceeds $10,000, properly filed in the District Court, may remove the case to Circuit Court by properly demanding a jury trial. Md.Code (1974, 2002 Repl.Vol.) § 4–402(e)(1) of the Courts and Judicial Proceedings Article. If the amount in controversy is $10,000 or less, the parties may not remove the case to the Circuit Court by demanding a jury trial.

The anomaly arises when the amount in controversy exceeds $2,500. Where the amount in controversy is $2,500 or less, an appeal *de novo*

entitled to a jury trial after Davis reduced the *ad damnum* clause from Twenty–Five Thousand Dollars to Ten Thousand Dollars.

Because Slater continued to be entitled to trial by jury, Davis's Motion to Strike Jury Demand was subject to Rule 2–325(f). Davis failed to obtain Slater's consent to withdraw the election as required by the Rule. Thus, the Circuit Court properly denied Davis's Motion to Strike Jury Demand.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTI- MORE COUNTY AFFIRMED. COSTS TO BE PAID BY PETITIONER.*

---

may be taken to the Circuit Court, where the common law entitlement to a jury trial attaches. In the situation where the amount in controver- sy exceeds $2,500, however, an appeal from the District Court to the Circuit Court is on the record. Md.Code (1974, 2002 Repl.Vol.) § 12– 401(f) of the Courts and Judicial Proceedings Article. We express no opinion as to the validity of that statute and Rule to the extent that they would preclude a jury trial.